**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-31305-H5-7** |
| **PORTER DEVELOPMENT** | § | |
| **PARTNERS, LLC** | § | |
| | § | **(Jointly Administered)** |
| **Debtors** | § | |

**TRUSTEE'S RESPONSE TO ELLISOR CLAIMANTS'
MOTION FOR RELIEF FROM STAY**

COMES NOW, Lowell T. Cage, Trustee ("**Trustee**") of the bankruptcy estates of Porter

Development Partners LLC ("**Porter**"), Creekmont Plaza Partners GP LLC, Creekmont Plaza

Partners LP, WB Murphy Road Development LLC ("**Murphy Road**"), Lakecrest Village

Investment LLC, Riata West Investment, LLC, Replacement Sanctuary GP LLC , WB Sanctuary

GP LLC , WB Chancel GP LLC , WB 2610 LLC, WB Real Estate Holdings LLC ("**WB**

**Holdings**"), Meadow Crest Developers GP LLC, Meadow Crest Developers 226 LP, Morton &

Porter GP LLC, Morton & Porter LP, WB Substitute GP LLC ("**Substitute GP**"), West Houston

WB Realty Fund LP ("**West Houston**"), PPP Management, LLC, WBIF II GP LLC, Wallace

Bajjali Investment Fund II LP ("**WB Fund II**"), and US Public – Private Real Estate Fund I, LP

(collectively the "**Debtors**"), and hereby files this Response to Ellisor Claimants' Motion for

Relief from Stay (Doc. No. 279), and in support thereof respectfully represents the following:

SPECIFIC RESPONSES TO MOTION

1.      Trustee admits the allegations in paragraph 1 of the Ellisor Claimants' Motion for

Relief from Stay (the "**Motion**").

2.      Trustee admits in part and denies in part the allegations presented in the first

sentence of paragraph 2.  Trustee has no personal knowledge of the allegations regarding the

creating of the three real estate funds but believes David Wallace assisted and does not believe the allegation that a conspiracy existed is true.  Trustee admits the second sentence of paragraph 2.  Trustee lacks the knowledge or information to admit or deny the allegations presented in the last sentence of paragraph 2.

3.      Trustee admits the allegations in paragraph 3 of the Motion.  Trustee admits that Exhibits A and B are attached but does not believe the contents completely and accurately reflect the organizational structure which is relevant to the Motion.  Trustee has filed an accurate and comprehensive organizational chart for the Court. (See Doc. No. 281)

4.      Trustee admits the allegations presented in paragraph 4 of the Motion.

5.      Trustee admits the allegations presented in paragraph 5 of the Motion.

6.      Trustee admits in part some of the allegations presented in the first sentence of paragraph 6.  Trustee admits that the most substantial assets of these jointly administered estates are held in Porter and Murphy Road.  Trustee lacks the knowledge or information to admit or whether such assets were purchased using the Ellisor Claimants' monies.  Trustee admits the allegations in the second sentence of paragraph 6 of the Motion.  Trustee denies the allegations presented in the last sentence of paragraph 6 of the Motion.

7.      Trustee lacks the knowledge or information to admit or deny the allegations presented in the first sentence of paragraph 7 of the Motion, however, based on his own due diligence he does not believe the allegations to be true.  Trustee lacks the knowledge or information to admit or deny the allegations presented in the second sentence of paragraph 7 of the Motion except Trustee believes the Ellisor Claimants invested in at least one of the Debtors.  Trustee admits in part and denies in part the allegations presented in the third sentence of paragraph 7.  Trustee admits that the LFW Economic Opportunity Fund, L.P. has not filed a

petition in bankruptcy but lacks the knowledge or information to admit or deny the remaining allegations of the third sentence regarding "many" of the claimants.

8.      Trustee lacks the knowledge or information to admit or deny the allegations presented in the first, second, and third sentences of paragraph 8 of the Motion, however, based on his own due diligence he does not believe the allegations to be true. Trustee admits in part and denies in part the allegations presented in the fourth sentence of paragraph 8.  Trustee admits that Wallace was a fiduciary of the Debtors but lacks the knowledge or information to admit or deny the remaining allegations presented in the fourth sentence of paragraph 8.

9.      Trustee lacks the knowledge or information to admit or deny the allegations presented in paragraph 9 of the Motion, however, based on his own due diligence he does not believe the allegations to be true.

10.     Trustee lacks the knowledge or information to admit or deny the allegations presented in paragraph 10 of the Motion, however, based on his own due diligence he does not believe the allegations to be true.

11.     Trustee lacks the knowledge or information to admit or deny the allegations presented in the first sentence of paragraph 11 of the Motion, however, based on his own due diligence he does not believe the allegations to be true.  Trustee lacks the knowledge or information to admit or deny the allegations presented in the second and third sentences of paragraph 11 of the Motion.

12.     Trustee lacks the knowledge or information to admit or deny the allegations presented in the first sentence of paragraph 12 of the Motion, however, based on his own due diligence, he does not believe the allegations to be true.  Trustee admits in part the allegations presented in the second sentence of paragraph 12 of the Motion.  Trustee admits that assets from

three Wallace Bajjali Funds were contributed to WB Holdings, but lacks the knowledge or information to admit or deny the remaining allegations presented in the second sentence, though, based on his own due diligence, he does not believe the allegations to be true.  Trustee lacks the knowledge or information to admit or deny the allegations presented in the third, fourth and fifth sentences of paragraph 12 of the Motion, however, based on his own due diligence, he does not believe the allegations to be true.

13.     Trustee denies the allegations in paragraph 13 of the Motion.

14.     No response is required to the legal arguments presented in paragraphs 14 through 22 of the Motion.  To the extent a response is required Trustee denies the allegations contained in paragraphs 14 through 26 or that Movants are entitled to the relief requested in the Motion.

GENERAL RESPONSE

**I.    Factual Background**

15.     Prior to commencement of Debtors' bankruptcy proceedings, Costa Bajjali ("**Bajjali**") and David Wallace ("**Wallace**"), former principals of the Debtors, formed three affiliated investment funds including West Houston, WB Fund II, and LFW Economic Opportunity Fund LP (the "**LFW Fund**") (collectively the "**Affiliated Funds**") and allowed individual investors to invest and hold pro rata interests in the Affiliated Funds.  The Affiliated Funds made investments in limited partnerships or limited liability corporations that were formed by Bajjali and Wallace to acquire and develop or resell commercial real property projects.

16.     Due to the economic downturn in 2008–2009, the General Partners of the Affiliated Funds proposed to consolidate the Affiliated Funds and their respective real estate assets into one consolidated holding company in an effort to sustain business operations and

4

successfully complete development of ongoing real estate projects.  Individual investors were notified of the proposed consolidation of the Affiliated Funds in which they had invested.

17.     In May 2009, West Houston, WB Fund II, the LFW Fund and WB Holdings entered into that certain Contribution Agreement (the "**Contribution Agreement**"). Pursuant to the terms of the Contribution Agreement, the Affiliated Funds contributed ownership interests in certain limited partnerships, limited liability corporations, and joint ventures as identified therein (the "**WB Fund II Contributed Interests**") to WB Holdings.  The equity interests of the Affiliated Funds in BusinessRadio Networks LP d/b/a BizRadio ("**BizRadio**") were not contributed to WB Holdings in the parties' Contribution Agreement.  Consequently, the consolidation transaction did not affect WB Fund II's equity ownership in BizRadio.

18.     Upon consummation of the Contribution Agreement, individual investors in West Houston, WB Fund II, and the LFW Fund, held the same *pro rata* interest, which were held by them prior to the consolidation, in the respective Fund's *pro rata* interest in WB Holdings.

**A.  Commencement of SEC's Enforcement Action Relating to BizRadio Investments**

19.     In November 2009, the Securities and Exchange Commission (the "SEC") commenced Civil Action No. 4:09-3674 in the United States District Court for the Southern District of Texas (the "SEC Enforcement Action") against Albert Kaleta and Kaleta Capital Management Inc.  ("KCM") (collectively the "Kaleta Defendants") for their fraudulent offering of promissory-note securities to approximately 50 investors.  In the SEC Enforcement Action, the SEC alleged that Kaleta directed KCM to loan approximately $6.7 million of the offering proceeds to BusinessRadio Network LP d/b/a BizRadio ("BizRadio") and Daniel Frishberg Financial Inc. d/b/a DFFS Capital Management Inc. (collectively the "Relief Defendants") two financially precarious KCM affiliates who had no reasonable prospect of repaying the loans.

The SEC also alleged that Kaleta took about $1.5 million of the offering proceeds to pay his personal expenses and that Kaleta directed KCM to use offering proceeds to make interest payments to some promissory-note investors.   By reason of their actions, the SEC alleged that Kaleta and KCM violated various sections of the Securities Acts of 1933 and 1934, the Exchange Act, and the Investment Advisers Act of 1940.  The SEC sought judgment against Kaleta and KCM as follows: injunctive relief, disgorgement of illicit profits, payment of civil money penalties, and the appointment of a receiver for KCM's assets.  The SEC also initially sought disgorgement from the Relief Defendants solely for the purposes of equitable relief.

20.     In December 2009, the District Court approved the Agreed Order of the SEC and Kaleta and KCM ordering the appointment of a receiver (the "Receivership Order").  The SEC, Kaleta, and KCM simultaneously entered into their Agreed Judgment in which Kaleta and KCM agreed to injunctive relief and disgorgement of ill-gotten gains and payment of civil penalties for later determination by the District Court upon request of the SEC.

21.     As part of the Receivership Order, the District Court ordered as follows:

- appointed Thomas L. Taylor to be the receiver (the "Receiver) for KCM assets
- commanded the Receiver to perform all acts necessary to conserve, hold, manage, and preserve the value of the receivership estate
- restrained "creditors and all persons" from the commencement or continuation of any judicial, administrative, or other proceeding against the Receiver, the Defendants, and the receivership interest
- restrained creditors and all persons without prior approval of the court from any act to obtain possession of the receivership estate assets

22.     In May 2010, the Receiver filed his Motion to Modify the Receivership Order requesting an expansion of the receivership estate based on the alleged intertwined assets of the Relief Defendants and the Kaleta Defendants. Subsequently, pursuant to a stipulation to modify the Receivership Order, the District Court entered an Order Modifying the Receivership Order and expressly expanded the scope of the receivership assets to include assets of the Relief Defendants.

**B.   Receiver's Sale of BizRadio Assets**

23.     After entry of the Order Modifying the Receivership Order, the Receiver requested authority from the District Court in May 2011 to sell the radio station assets in Alvin, Texas, of BizRadio, one of the Relief Defendants, for the sum of $1.0 million, the assumption of certain expenses, and other non-cash consideration to South Texas Broadcasting Inc. ("STB") Various noteholders and/or investors of BizRadio ("BizRadio Noteholders"), represented by Charles Thomas Schmidt and the Schmidt Law Firm (collectively "Schmidt") as their counsel, objected to the Receiver's proposed sale to STB. After an initial hearing before the District Court in late June 2011, the BizRadio Noteholders withdrew their objection to the Receiver's sale to STB but continued to assert their claim to the BizRadio assets and, therefore, the sale proceeds as secured creditors and, alternatively, their claim for equitable subrogation since their funds were allegedly used to pay off the original lender of BizRadio. In late October 2011, the District Court approved the Receiver's sale of the BizRadio assets; and on December 2, 2011, the District Court entered its Memorandum and Order approving the proposed sale and its rejection of the BizRadio Noteholders' claims and finding that the BizRadio Noteholders did not establish that their funds paid the debts of BizRadio and that they did not hold enforceable security interests in the BizRadio assets.

### C.  Commencement of SEC's Action against Principals of Wallace Bajjali Debtors

24.     In May 2011, the SEC also filed additional enforcement actions related to the receivership proceeding including *SEC v. David Gordon Wallace Jr. and Costa Bajjali* in Civil Action No. 4:11-cv-1932  (the "WB Enforcement Action") alleging violations of the Securities Act of 1933.  This action arose because the Wallace and Bajjali controlled Fund II and the LFW Fund took debt and equity position in BizRadio which allegedly exceeded the maximum positions Wallace and Bajjali represented to investors that those investment funds would take in any single business or project.  An Agreed Final Judgment was entered in the WB Enforcement Action against Wallace and Bajjali permanently enjoining each of them from future violations of the Securities Act and imposing civil penalties on each of them in the amount of $60,000.

### D.  Receiver's Settlement with Wallace Bajjali Parties

25.     After completing his analysis and evaluation of the potential claims in the SEC Enforcement Action, the Receiver reached an agreement to settle the receivership estate claims. In September 2011, the Receiver filed his Motion for Order Approving Proposed Settlement and for Ancillary Orders (the "Settlement Motion") in the SEC Enforcement Action.  In the Settlement Motion, the Receiver requested authority to settle all claims of the receivership estate against Wallace, Bajjali, Fund I, Fund II, and the LFW Fund, Spring Cypress Investments LP ("Spring Cypress Investments"), and Wallace Bajjali Development Partners LP ("WB Development Partners") (collectively the "Wallace Bajjali Parties"). In connection with the settlement, the Receiver also sought entry of an order barring for all time claims of the BizRadio Noteholders against the Wallace Bajjali Parties (the "Bar Order") in connection with or related to loans or promissory notes obtained through any Wallace Bajjali Party as agent and issued by any BizRadio entity. However, the BizRadio Noteholders would be able to assert their radio station

loan-related claims through the claims process in the Receiver's ultimate plan of distribution of receivership assets.  The BizRadio Noteholders opposed the Receiver's proposed settlement; and on October 2, 2011, filed their formal objection with the District Court.   In their objection, the BizRadio Noteholders asserted various grounds for opposing the settlement including, but not limited to, inadequate consideration for the settlement and foreclosure of their personal claims against non-parties.

 26. Upon hearing the Settlement Motion, the District Court ordered the Receiver to submit financial documents of the Wallace Bajjali Parties *in camera.*  After reviewing the financial documents of the Wallace Bajjali Parties and considering the Receiver's assessment of the cost of litigation and difficulty of collecting any judgment and merits of the proposed settlement, the District Court approved the settlement and issued its Memorandum and Order finding that the Bar Order advances the Receiver's goal "of limiting litigation involving the BizRadio entities in regard to radio station liabilities and assets . . . to enable the Receiver to collect as many assets as possible for distribution among all defrauded investors." (Memorandum at page 23). Subsequently, on August 1, 2012, the District Court entered its Final Bar Order and Injunction which specifically ordered that "any and all of the BusinessRadio Note Holders are hereby permanently barred, restrained, and enjoined, . . . from commencing or continuing any judicial . . or other proceeding and/or asserting or prosecuting any claims and/or causes of action against any of the Wallace Bajjali Parties arising out of, in connection with, or relating in any way to the BusinessRadio Note Plan, the loans made to BusinessRadio or its related entities by the BusinessRadio Note Holders, and/or the notes issued by BusinessRadio or its related entities to the BusinessRadio Note Holders."

27.     On appeal of the District Court's Order, the Fifth Circuit affirmed the District Court's approval of the Receiver's settlement agreement with the Wallace Bajjali Parties and the Bar Order. *SEC V. KALETA*, 530 f. App'x 360 (5th Cir. 2013).

28.     In August 2015, the BizRadio Noteholders requested the District Court to Modify the Bar Order on the grounds that the Wallace Bajjali Parties defaulted on the terms of their settlement with the Receiver in December 2014.  In September 2015, the District Court held a hearing on the BizRadio Noteholders' request for modification of the Bar Order and soon thereafter entered its Memorandum and Order on September 29, 2015, and found that the BizRadio Noteholders had not satisfied the requirements of Fed. R. Civ. Proc. 60 to lift the Bar Order.

### E.  District Court's Approval of Receiver's Final Distribution

29.     By mid-2016, the Receiver had substantially completed his work in liquidating and recovering assets for distribution to investors and creditors as required by the District Court's appointment orders for the receivership estate.  On June 24, 2016, the Receiver filed his Motion to Approve Final Plan of Distribution of Receivership Assets (the "Motion to Approve Distribution Plan") in which the Receiver proposed a final distribution on a *pro rata* basis to the claimants of the receivership estate.  The Receiver proposed to treat all claimants as similarly situated – regardless of the receivership entity (or entities) into which they invested – for purposes of determining the *pro rata* distribution to each.

30.     On January 5, 2017, the District Court approved the Motion to Approve Distribution Plan.   Thereafter, the Receiver filed his Notice of Final Distribution to Final Claimants (the "Notice of Final Distribution").  Pursuant to the Notice of Final Distribution, the Receiver proposed to distribute the sum of $124,716.46 to Fund II as the holder of Claim 90 for

equity investments in BizRadio totaling in excess of $6.388 million between 2006 and 2008. In February 2017, the Receiver remitted the sum of $124,716.46 to the Trustee as trustee for the bankruptcy estate of Fund II.

**A.      Ellisor Claimants' Initiation of Harris County District Court Litigation**

31.      On June 25, 2014, the Ellisor Claimants, initiated Cause No. 2014-36580 styled *Ronald & Lavonne Ellisor et al. v. Daniel Frishberg et al* in the 61st Judicial District Court of Harris County, Texas (the "**District Court Lawsuit**") against 18 defendants including, but not limited to, Wallace, Bajjali, WB Fund II, WB Holdings, West Houston, and Substitute GP, (collectively the "**WB Defendants**"). Neither Porter nor Murphy Road were sued in the District Court Lawsuit. In the lawsuit, the Ellisor Claimants alleged various claims against the WB Defendants including, but not limited to, negligent misrepresentation, breach of fiduciary duty, and common law fraud. The genesis of the claims asserted by the Ellisor Claimants' in the District Court Lawsuit arises from their investments (direct or indirect) in the defunct BizRadio. The Ellisor Claimants also allege that the WB Defendants used BizRadio as a platform to illegally market their investment businesses in violation of state securities laws.

32.      In early March 2015, the Ellisor Claimants also sought imposition of a constructive trust over the assets of the Wallace-Bajjali related entities, the appointment of a receiver, and issuance of an order finding the WB Defendants indebted to them in the aggregate amount of $11.465+ million.

33.      On March 24, 2015, David Wallace filed his voluntary chapter 7 bankruptcy proceeding in Cause No. 15-31594 in the United States Bankruptcy Court in the Southern District of Texas and simultaneously filed his Notice of Initiation of Bankruptcy in the District Court Lawsuit.

34.     On March 30, 2017, after realizing the District Court Lawsuit was proceeding notwithstanding imposition of the automatic stay, the Trustee filed the Suggestion of Bankruptcy for the estates of WB Fund II, WB Holdings, West Houston, and Substitute GP (the "**Wallace-Bajjali Debtors**") which have been included as parties in the District Court Lawsuit.

35.     The Wallace-Bajjali Debtors have not been severed as parties and the automatic stay has not been lifted in their bankruptcy proceedings.  Nevertheless, the Ellisor Claimants have continued prosecution of their claims and have recently filed their Eighth Amended Petition in the District Court Lawsuit against the WB Defendants.  Despite knowledge of the Wallace-Bajjali Debtors' respective bankruptcy filings, they have failed to formally segregate out the Debtors.  Instead, by footnote reference, the Ellisor Claimants mention the bankruptcy proceedings of the related Wallace-Bajjali Debtors and imposition of the automatic stay in the District Court Lawsuit.  During his administration of the Debtors' estates, Trustee has been repeatedly assured by Movants' counsel that the stay was in place and that he was not proceeding against the Wallace-Bajjali Debtors in the District Court Lawsuit.

**B.     Ellisor Claimants' Bankruptcy Claims**

36.     Since then the Ellisor Claimants have filed numerous proofs of claim against the Debtors' respective estates.  However, that does not necessarily mean they invested in any of the Affiliated Funds and, instead, many Ellisor Claimants instead invested directly in BizRadio.  Nevertheless, the Ellisor Claimants allege that the Debtors, BizRadio, KCM, Kaleta, and DFFS operated a Ponzi scheme such that the assets of each Debtor can be used to pay the amounts owed to them.

**II.     <u>General Response to Relief Requested</u>**

37.     Nearly three years after they learned of the Debtors' bankruptcy proceedings, the Ellisor Claimants now seek relief from the automatic stay to file pleadings which would allow them to liquidate claims they purportedly hold against the Debtors' estates.  As mentioned above, the Wallace-Bajjali Debtors (WB Fund II, WB Holdings, West Houston and Substitute GP) are currently named as defendants in the District Court Lawsuit.  Again, claims and relief asserted against them has not been formally severed from the lawsuit.  By their Motion, the Ellisor Claimants now wish to lift the stay to add Porter and Murphy Road as Defendants in the District Court Lawsuit.  The Ellisor Claimants also request relief from the automatic stay to liquidate claims against the LFW Fund and Wallace Bajjali Development Partners, L.P. neither of which have filed bankruptcy.

38.     Although the Ellisor Claimants make general allegations of fraud in the Motion, they do not specify what causes of action they actually wish to prosecute or bring against the respective Debtors.  Based on the causes of action brought in their Eighth Amended Petition the Trustee presumes they intend to bring claims against the Debtors for negligent misrepresentation, breach of fiduciary duty, knowing participation in breach of fiduciary duty, common law fraud (including failure to disclose, fraudulent inducement, conspiracy to defraud, and aiding and abetting fraud), violations of the Texas Securities Act and civil conspiracy.  However, based on statements made to him and to the Court and the recoveries they seem to ask for, the Trustee believes that the Ellisor Claimants true intent is to assert fraudulent transfer and alter ego claims against the Debtors because Wallace and Bajjali were principals of each Debtor.

39.     While the Ellisor Claimants assert that they wish to liquidate claims belonging to them individually, the claims to be asserted by them belong to the bankruptcy estate.  The automatic stay under Section 362(a) is meant to further the Bankruptcy Code's general policy of

securing and preserving estate property to ensure that similarly-situated creditors receive equal distribution of the debtor's assets.  *S.I. Acquisition, Inc. v. Eastway Delivey Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1150 (5th Cir. 1987).  Therefore, if a creditor attempts to bring a generalized claim which could by brought by any creditor of the debtor, "the trustee is the proper person to assert the claim."  *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989).  So, for example, creditors cannot bring alter ego claims against parties under Texas law or seek to recover or control property of the debtors under such law since it can be brought by any creditor of the debtor.  *In re S.I. Acquisition*, 817 F.2 at 1153–54.

40.     Although the Trustee believes the Ellisors Claimants' claims are unfounded, if true, they are true for every individual who invested monies with the Debtors.  By allowing the continuation of the District Court Lawsuit against the WB Defendants, Porter and Murphy Road the Court would be granting a limited subsect of creditors' an inequitable distribution of assets. Instead, the causes of action currently brought by the Ellisor Claimants against the defendants in the District Court Lawsuit belong to the Trustee for the benefit of all creditors for Debtors' estates.

41.     In addition, the Ellisor Claimants wish to bring causes of action against Debtors which are now beyond limitations.  *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 206–07 (Tex. 2011) (Negligent misrepresentation claims are subject to a two-year statute of limitations); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4)–(5) (A person must bring suit for fraud or breach of fiduciary duty within 4 years of the day the cause of action accrues); Tex. Rev. Civ. Stat. Ann. art. 581-33-1(H) (The statute of limitations for actions based on violation of Texas Securities Act is three years from the date of sale and, in cases of fraud, three years from the date the relevant misrepresentations or omissions were discovered, or should

have been discovered with reasonable diligence, but in no event more than five years after the purchase or sale.).

42.     The allegations in the Motion show that the Ellisor Claimants believe the actions giving rise to the claim occurred at the time of the Contribution Agreement in May 2009 more than 4 years before the Debtors Bankruptcy Cases were commenced.  As such, any cause of action currently named in the litigation would be barred by limitation.  In addition, the argument that the limitations were tolled until the filing of the bankruptcy is at the very least, disingenuous. The Ellisor Claimants knew about the Contribution Agreement in May 2009.  The discovery rule provides that limitations runs from the date the claimants knew or should have known about the injury and does not allow plaintiffs a right to bury their heads in the sand.  Moreover, if their argument is correct, it also means they brought the District Court Lawsuit before their causes of action accrued.  Finally, although they claim violations to the Texas Securities Act, they have not sufficiently pled in the Motion or the District Court Lawsuit, when the Ellisor Claimants purchased their interests in the Affiliated Funds.  Based on the allegations in their petition, it appears the claims arose before November 2009.  Accordingly, the Ellisor Claimants do not have any causes of action that they can bring against the Debtors which are not time barred or can be shown not to be time barred.

43.     Finally, although not alleged in the Motion, the Ellisor Claimants have alluded to a right to bring certain unspecified causes of action because the Trustee has refused to bring them.  While in certain narrow circumstances, a creditor or committee might be able to obtain the right to pursue causes of action <u>for the benefit of the estate</u>, the exception is not applicable to the Ellisor Claimants (emphasis added).  *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988).  To show this narrow exception, the creditor must show the trustee

unjustifiably refused a demand to pursue a colorable claim or cause of action and thereafter obtain leave from the bankruptcy court to prosecute the action for and in the name of the trustee. *Id.* at 24; *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990).  Here, the Ellisor Claimants do not satisfy the exception and even if they did, they could not obtain relief solely for themselves to the detriment of all other creditors and investors.

### III.   Conclusion

44.   Now that the Trustee has substantially completed his administration of the Debtors' assets, the Ellisor Claimants belatedly seek to elevate their equity claims in the Affiliated Funds into unsecured claims against Porter and Murphy Road.  In the Trustee's opinion, the Ellisor Claimants are merely creating causes of action in an attempt to recover assets to which they are not entitled.  Simply put, the Motion is an attempt to substantively consolidate specific estates for the benefit of a few creditors, some of whom never even invested in any of the Debtors.  Accordingly, the Motion should be denied.

Wherefore, premises considered, the Trustee requests that the Ellisor Claimants' Motion for Relief from Stay be denied and for such other and further relief to which he may be entitled.

Respectfully submitted,

*/s/ Theresa Mobley*
THERESA MOBLEY
State Bar No. 14238600
VIANEY GARZA
State Bar No. 24083057

OF COUNSEL:
CAGE, HILL & NIEHAUS, L.L.P.
5851 San Felipe, Suite 950
Houston, Texas 77057
Telephone: (713) 789-0500
Telecopier: (713) 974-0344
ATTORNEYS FOR LOWELL T. CAGE, TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2018, a true and correct copy of the Trustee's Response to the Elliosor Claimants' Motion for Relief from Stay was served by to the following parties by the following means:

**Movant's Counsel**
Charles Thomas Schmidt
Schmidt Law Firm
3701 Kirby Dr., Suite 845
Houston, Texas  77098
*Via BK/ECF and electronic mail*

**Counsel for Bryan Stanley**
Peter Johnson Esq.
1738 Sunset Blvd
Houston,Texas77005
*Via BK/ECF and electronic mail*

**U.S. Trustee**
Office of the U.S. Trustee
515 Rusk Ave., Ste. 3516
Houston, Texas 77002
*via BK/ECF*

*/s/ Theresa Mobley*
Theresa Mobley