IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| PORTER DEVELOPMENT PARTNERS, LLC | § § § § | CASE NO. 15-31305-H5-7 |
| WB MURPHY ROAD DEVELOPMENT, LLC | § § § § | CASE NO. 15-31307-H5-7 |
| WB REAL ESTATE HOLDINGS, LLC | § § § § | CASE NO. 15-31770-H5-7 |
| WALLACE BAJJALI INVESTMENT FUND II, LP, | § § § § | CASE NO. 15-31772-H5-7 |
| DEBTORS | § | (Chapter 7) |

**TAYLOR CLAIMANTS' SURREPLY REGARDING TRUSTEE'S
AMENDED MOTION FOR SUMMARY JUDGMENT [Dkt. No. 705]**

TO THE HONORABLE EDUARDO RODRIGUEZ, UNITED STATES BANKRUPTCY JUDGE:

COME NOW, Donald Taylor ("Taylor") and Donald Taylor, Trustee for Estate of Roger T. Taylor, Deceased and Trustee for the Trust of Ethelyn S. Taylor, Blake Taylor ("B. Taylor"), Ron and Emily Bass ("Bass"), Randall DePue ("DePue"), Michael Dorsey ("Dorsey"), Albert and Sathya Furtado ("Furtado"), Jimmy Harrell and Carolyn Graves ("Harrell"), Jim and Carol Maas ("Maas") and Jim Pier ("Pier") (collectively, the "**Claimants**"), and, having received leave of Court, file this Surreply to the Trustee's Motion for Summary Judgment, and would respectfully show unto the Court as follows:

**INTRODUCTION**

1.      There are multiple reasons the Court should deny the Motion for Summary Judgment as to limitations,[1] but the most salient is on the basis of the discovery rule. Claimants contend that their claims did not accrue until 2015 when Wallace Bajjali closed and their investments were lost, but even if that were not true, it cannot be said that they "knew or should have known of their injury" prior to 2014 in light of the fact that Wallace and Bajjali still maintain that the Merger was fair, was appropriate, and that the diversion of money to IIRC on behalf of BizRadio was legitimate. Even the Trustee is arguing in this case at this late date that the Merger was reasonable and "good for the companies." Obviously, if the Trustee had been one of the claimants, he still would not have filed a lawsuit or claim, so it is disingenuous to suggest Claimants should have done so in 2009. There is no evidence in the record that any of the Claimants had knowledge of the breaches of fiduciary duties or the fraud or the transfers. The fact is that they learned about them through the litigation in 2015 and since. This case is the classic example of one where the discovery rule tolls limitations, and that should be the basis of the Court's denial of the Trustee's Motion for Summary Judgment.

2.      With regard to the subordination issue, it is not ripe for summary judgment, and should not be decided until after the Court has held the estimation hearing.

## **SUMMARY JUDGMENT STANDARD**

3.      In his briefing, the Trustee mentions very little about the summary judgment standard. This is because it is unfavorable to the Trustee obtaining summary judgment in this

---

[1]     These include: (1) The Trustee has not established conclusively when any claim of any Claimant accrued; (2) the tolling agreements tolled limitations; (3) the forbearance agreements tolled limitations; (4) the discovery rule tolled limitations; (5) Wallace, et al., fraudulently concealed the claims; and (6) Claimants have presented sufficient evidence to raise a fact issue as to all of the above.

case. A defendant moving for summary judgment on the affirmative defense of limitations has the burden to <u>conclusively</u> establish that defense. "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

4. Thus, the Trustee must (1) conclusively prove when each cause of action accrued, and (2) negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, their injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.* The Trustee would also have to defeat Claimants' assertion of fraudulent concealment. He has done none of those things.

5. In determining whether the Trustee has met that "exacting" burden, the Court must "view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). Resolution of factual issues, weighing the evidence, or assessment of the credibility of witnesses should not be undertaken at the summary judgment stage; the focus is on identifying whether a factual dispute exists. *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(quotation omitted).

6. Here, it is clear that the overwhelming evidence (including David Wallace's testimony and Daniel Hedges' email to Claimants, and Claimants' Declarations) demonstrates that no injury was suffered by Claimants prior to March of 2011 (four years before the

Bankruptcy filing), and therefore the Trustee's Motion should be denied as to Limitations. The discovery rule, fraudulent concealment, the tolling agreements, and the forbearance agreements all also raise fact questions on when limitations began running.

7. Likewise, when the evidence is considered in the light most favorable to Claimants, summary disposition of the subordination issue is not appropriate. Such a ruling would deprive Claimants of the right to an estimation of their claims as required in the Fifth Circuit.

## SURREPLY

### A. The Trustee has not conclusively established when the claims accrued.

8. The Trustee has made arguments as to when Claimants' causes of action accrued, but he has not proven conclusively for any claimant when any claim accrued. In fact, during the deposition of the Trustee in these proceedings, when asked when the statute of limitations began running, the Trustee admitted that he did not know. *See* Exhibit A-2 [ECF 708], at pp. 60:13 – 61:1. The Trustee responds that elsewhere in his deposition he proffered his opinion that the claims accrued in 2009, but what he said was he "would assume" 2009 "would be a good starting point." *See*, Schmidt Dec. (ECF#708), Exhibit A2 - Cage Transcript, P 59 (ECF#708-2) He had to admit that a claim does not accrue until a bad act causes an injury. *Id*. at P 60. He also agreed that one could interpret Dan Hedges' emails in 2012 to mean that Claimants had not suffered an injury as of that date. *Id.* at P 61. At a minimum, that is an admission that there is a fact question as to when the claims accrued.

### B. The Taylor Claims Accrued in 2015 – Less than one year before the Petition Dates

9.     Under Texas law and Fifth Circuit precedent, the claims here did not accrue until the investments were lost in 2015, even though the acts giving rise to the claims occurred years earlier. *Bauman v. Centex Corp.*, 611 F.2d 1115 (5th Cir. 1980).

10.    The Trustee contends the *Atkins* case does not justify denying summary judgment here, but it is the perfect example of a situation where a bad act is not certain to cause an injury, and limitations beginning to run once the injury occurs. *Atkins v. Crosland,* 417 S.W.2d 150 (Tex. 1967).

11.    The Trustee's indictment of the *Bauman* case is equally misguided. There is nothing inherently "wrong" with Wallace Bajjali merging their partnerships. If that had saved the companies and the investors all got their money back plus a return, the investors would never have had a cause of action. Likewise, over investing in BizRadio is not necessarily tortious because if BizRadio had been successful and Wallace Bajjali made millions for that investment, the investors could not have sued. It was the loss of their money when WB failed that gave rise to the cause of action. That is precisely the situation to which *Atkins* and *Bauman* and *Mitchell Energy* and countless other cases refer.

12.    The Trustee refers to the limitations standard as an "exception to the well-established rule." The situation where an injury occurs later than the bad act is not an exception to the rule, it is merely an unusual fact pattern. The Rule is that a cause of action accrues "when a wrongful act causes an injury." It is the rule, not an exception, that says if the injury does not occur until years later then limitations does not begin running until then.

**C. The Discovery Rule Tolled Limitations**

13.    As the Trustee has conceded, the discovery rule tolls limitations until the Claimant knew or should have known of their "injury." *PPG Indus, Inc. v. JMB/Houston*

*Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 93-94 (Tex. 2004).  Not when they knew or should have known of the defendant's wrongful act.  Thus, until Claimants knew or should have known they had lost money on their Wallace-Bajjali investments, limitations was tolled.

14.   The Trustee did not address the discovery rule in his Reply.  Claimants have created fact issues as to when they knew or should have known of their injuries, and those fact issues preclude summary judgment on the limitations defense.

**D.  Fraudulent Concealment Tolled Limitations**

15.   The Trustee has not responded to Claimants assertion that the co-conspirators' fraudulent concealment tolled limitations until 2014, when Dan Hedges, David Wallace, Costa Bajjali, and the companies were telling Claimants they were going to get all of their money back plus a return from the $1 billion Joplin contract and the resulting IPO.  Claimants' evidence on this point is more than sufficient to raise a fact question as to whether limitations was tolled.

**E.  Murphy Road and Porter Are Parties to the Tolling Agreements**

16.   Without valid authority, the Trustee continues to assert that Debtors Murphy Road and Porter are not "affiliates" of the Wallace Bajjali entities named in the tolling agreements. Murphy Road and Porter were subsidiaries of the LFW Fund and WBIF2 until the alleged Merger, at which point they allegedly became second level subsidiaries, with LFW and WBIF2 owning WB Holdings, and WB Holdings in turn holding the ownership of Murphy and Porter.  It is nonsense to assert that they were not affiliates, particularly given the fact that Claimants' money funded them through the WB funds and the fact that David Wallace and Costa Bajjali controlled all of the relevant entities and marketed the portfolio of funds and companies as "Wallace Bajjali."

17. The Trustee's argument here, even if rejected by the Court, single-handedly defeats their Motion for Summary Judgment on subordination because it raises a fact issue as to the nature of the relationship between the Claimants and Porter and Murphy Road. Effectively, the Trustee is arguing that Claimants were not equity investors in Porter and Murphy because those companies were not corporate affiliates of the companies into which Claimants invested.

**F. The Forbearance Agreements Toll Limitations for All Claimants**

18. The Trustee has not established that the Forbearance Agreements were ineffective, so summary judgment is inappropriate.[2]

19. The Trustee makes a new argument in his Reply that the Forbearance Agreements only extended "unbarred claims," but that provision refers to claims barred by the "Bar Order" issued by Judge Atlas that barred claims arising out of the Biz Radio Notes. In the fourth paragraph of the Forbearance Agreements, the Disputed Matters are defined as the claims brought in this Bankruptcy, and the parties to the Forbearance Agreements obviously thought they were still live as of November 2013, because they were the entire purpose of the Forbearance Agreements. *See* Exhibit A-11 at p. 6 [ECF 719-1]  Beyond that, the Trustee has not conclusively established that any claims were barred as of that date because he has not proven (1) that an injury had occurred; or (2) defeated the discovery rule; or (3) defeated fraudulent concealment.[3]

**G. State Court Summary Judgment Motions**

---

[2] Claimants still maintain that the forbearance agreements are superfluous in light of the fact that the Trustee concedes that Wallace Bajjali still had the billion plus dollar contracts for Amarillo and Joplin in play during 2014 and into early 2015 that would have generated more than enough money to return Claimants' money, so the claims did not accrue until Wallace Bajjali shut down in 2015.

[3] The statements in the Forbearance Agreements to the effect that the Make Up Shares Plan would give the investors a return on their investments was part of the scheme of fraudulent concealment on which Claimants rely. *See also,* Exhibit A-11 [ECF 719], at pp. 1-4 (Memo re Make-Up Share Plan).

20. For reasons unknown to Claimants, the Trustee added a footnote referencing several interlocutory rulings of the state court judge. The Trustee omits to note that the state court judge denied motions for summary judgment on limitations grounds filed by Boyar Miller, Sol Schwartz, and Fitts Roberts. The interlocutory motions granted in favor of Boyar Miller and Fitts Roberts were on the basis that those firms were outside professionals and therefore owed a lower duty to the Plaintiffs. None of that court's rulings has any bearing on the Motion before this Court.

### H.  The LFW Lack of Diversification

21. The Trustee went to great lengths in his Reply to explain why Claimants will lose their claims about the LFW Fund on their merits. Claimants could respond at this time, but that analysis is not relevant at this point. What is relevant is that the over investment in BizRadio in 2009 contributed to the failure of the funds in 2015. The injury from that wrongful act occurred (and thus was discovered) in early 2015 when the WB Funds failed.

22. Even the Trustee admits in his Reply (at paragraph 15) that: "After resolving the SEC Action, Wallace and Bajjali were then able to move forward with the development of the Public-Private Partnerships Projects and the IPO and the Make-up Share Plan as a course of action to provide returns to the investors on their investments in the Affiliated Funds." This proves Claimants' point that there was no injury at the time, and it wasn't until 2015 that the Wallace Bajjali funds failed and Claimants lost their investments. Summary judgment on limitations is not appropriate.

### I.  Subordination and Estoppel

23. The Trustee did not address either subordination or his estoppel argument in his Reply, so Claimants will rest on their Amended Response on those two issues.

### REQUEST FOR RELIEF

WHEREFORE, premises considered, Claimants respectfully request that the Trustee's Motion for Summary Judgment be denied.

Submitted this 19th day of August, 2021.  Respectfully submitted,

**Schmidt Law Firm, PLLC**

_____
C. Thomas Schmidt
State Bar No. 00797386
7880 San Felipe, Suite 210
Houston, Texas 77063
(713) 568-4899 Phone
(815) 301-9000 Fax
firm@schmidtfirm.com

**ATTORNEYS FOR THE TAYLOR CLAIMANTS**

**CERTIFICATE OF SERVICE**

      I, the undersigned counsel of record, hereby certify that a true and correct copy of the foregoing Response to Trustee's Motion for Summary Judgment and Request for Oral Hearing, as well as the supporting documents attached thereto, have been served by ECF notice upon the following parties on this the 19th day of August, 2021:

**Trustee**
Lowell T. Cage
Cage, Hill & Niehaus, L.L.P.
5851 San Felipe Street, Suite 950
Houston, Texas 77057

**Trustee's Counsel**
Theresa Mobley
Vianey Garza
Cage, Hill & Niehaus, L.L.P.
5851 San Felipe Street, Suite 950
Houston, Texas 77057

**U.S. Trustee**
Office of the U.S. Trustee
515 Rusk Avenue, Suite 3516
Houston, Texas 77002

                        C. Thomas Schmidt