United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 13, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| PORTER DEVELOPMENT PARTNERS, | § | CASE NO. 15-31305 |
| LLC; | § | |
| WB MURPHY ROAD DEVELOPMENT, | § | CASE NO. 15-31307 |
| LLC; | § | |
| WB REAL ESTATE HOLDINGS, LLC; | § | CASE NO. 15-31770 |
| WALLACE BAJJALI INVESTMENT | § | |
| FUND II, LP | § | CASE NO. 15-31772 |

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is "Trustee's Amended Motion for Summary Judgment on the Late-Filed Claims of the Taylor Claimants" filed by the chapter 7 trustee, Lowell T. Cage.[1]  The trustee filed his summary judgment motion pursuant to Federal Rule of Civil Procedure 56, seeking an order granting summary judgment in his favor and against Donald Taylor, individually, and Donald Taylor, Trustee for Estate of Roger T. Taylor, Deceased and Trustee for the Trust of Ethelyn S. Taylor, Blake Taylor, Ron and Emily Bass, Randall DePue, Michael Dorsey, Albert and Sathya Furtado, Jimmy Harrell and Carolyn Graves, Jim and Carol Maas, and Jim Pier.  On July 21, 2021, the claimants filed a response to the trustee's motion for summary judgment.[2]  On December 14, 2021, this Court held a hearing on the motion for summary judgment.  At that hearing, this Court ordered the parties to submit briefing on the narrow issue of standing.  All briefing has been submitted and the matter is now ripe for determination.

The Court finds that the claimants here have not satisfied their summary judgment burden as to standing and thus, their proofs of claim based on the seven causes of action alleged must be disallowed.  For that reason, the proofs of claim filed by Donald Taylor, individually, and Donald

---

[1] ECF No. 705.
[2] ECF No. 720.

Taylor, Trustee for Estate of Roger T. Taylor, Deceased and Trustee for the Trust of Ethelyn S. Taylor, Blake Taylor, Ron and Emily Bass, Randall DePue, Michael Dorsey, Albert and Sathya Furtado, Jimmy Harrell and Carolyn Graves, Jim and Carol Maas, and Jim Pier against Debtors based on negligence, negligent misrepresentation, breach of fiduciary duty, knowing participation in breach of fiduciary duty, common law fraud, conspiracy to commit fraud, and aiding and abetting securities fraud are disallowed.  The trustee does not object to Donald Taylor's claims against Porter Development Partners, LLC for $36,796.10 and against WB Murphy Road Development, LLC for $400,000 based upon unpaid promissory notes and thus those claims will be allowed solely against those Debtors respectively.

## I.  JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[3]  While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[4]  28 U.S.C. § 157 provides a non-exclusive list of matters considered core proceedings.  Included in that list and relevant here is the allowance or disallowance of claims against the estate.[5]  However, the claimants' claims are solely based on state law causes of action, which are non-core.

"Whether a pre-petition state law claim constitutes either a core or non-core proceeding depends upon (1) whether the creditor filed a proof of claim with the bankruptcy court and (2) the relationship between the state action and proof of claim."[6]  "Where a party has filed a proof of

---

[3] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[4] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668–72 (2015).
[5] 28 U.S.C. § 157(b)(2)(A), (B), (O).
[6] *Barbknecht Firm, P.C. v. Keese (In re Keese)*, No. 18-40817, 2021 Bankr. LEXIS 478, at *54 (Bankr. E.D. Tex. Feb. 28, 2021) (quoting *Ramco, Inc. v. Charles Guy Evans & Sons, Inc. (In re Charles Evans Trucking Inc.)*, 595 B.R. 715, 722–23 (Bankr. S.D. Miss. 2018)).

claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C. § 157(b)(2)(B)."[7]  Because the claimants' state law causes of action are asserted as the basis of their claims,[8] this is a core proceeding and thus, this Court has constitutional authority to enter a final judgment.

However, even if the state law nature of the claimants' causes of action make this a non-core proceeding, the trustee explicitly consented to this Court's entry of final judgments on non-core matters by filing a Notice of Consent[9] and the claimants implicitly consented.[10]  The claimants never filed a Notice of Non-Consent and have appeared before this Court and engaged in motions practice, without ever objecting to this Court's authority to enter a final judgment.  Therefore, this Court has consent, both express and implied, to enter a final judgment in this case.

Finally, venue is governed by 28 U.S.C. §§ 1408 and 1409.  Venue is proper because the Court is currently presiding over the debtors' bankruptcy cases.[11]

## II. Background History

### A. Background Facts

The claimants here (collectively, "*Claimants*") consist of a several individuals who invested in one or more of the following entities: Porter Development Partners LLC ("*Porter*"), WB Murphy Road Development LLC ("*Murphy Road*"), WB Real Estate Holdings LLC ("*WB*

---

[7] *In re Charles Evans Trucking Inc.*, 595 B.R. at 723 (quoting *In re Best Reception Sys.*, 220 B.R. 932, 944–45 (Bankr. E.D. Tenn. 1998) (collecting cases including *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97–97 (5th Cir. 1987))).

[8] Claim Nos. 14-2, 70-1, 71-1, 72-1, 73-1, 74-1, 75-1, 76-1, 77-1, 78-1, 79-1 ("What is the basis of the claim? Conspiracy to commit fraud to induce loans and investments.").

[9] ECF No. 634.

[10] *Sharif*, 575 U.S. at 683 ("Sharif contends that the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be express.  We disagree.  Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express.  Nor does the relevant statute 28 U.S.C. § 157, mandate express consent . . .").

[11] *See* ECF No. 1.

*Holdings*"), and Wallace Bajjali Investment Fund II LP ("*Fund II*") (collectively, "*Debtors*"), or Creekmont Plaza Partners GP, LLC, Creekmont Plaza Partners, LP, Lakecrest Village Investments, LLC, Riata West Investment, LLC, Replacement Sanctuary GP, LLC, WB Chancel GP, LLC, WB 2610, LLC, Meadow Crest Developers GP, LLC, Meadow Crest Developers 226, LP, Morton & Porter GP, LLC, Morton & Porter, LP, WB Substitute GP, LLC, West Houston WB Realty Fund, LP, PPP Management, LLC, WBIF II GP, LLC, Wallace Bajjali Investment Fund II, and US Public – Private Real Estate Fund I, LP (collectively "*Related Debtors*").

Only Donald Taylor ("*D. Taylor*") solely made loans to Debtors, Related Debtors, or non-debtor entities.[12]  Blake Taylor ("*B. Taylor*"), the Roger G. Taylor Trust ("*R. Taylor Trust*"), the Ethelyn S. Taylor Trust ("*E. Taylor Trust*"), Ron and Emily Bass ("*Bass*"), and Jimmy Harrell and Carolyn Graves ("*Harrell*") made both loans to and purchased interests in Debtors, Related Debtors, or non-debtor entities.[13]  The remaining Taylor Claimants, Randall DePue ("*DePue*"), Michael Dorsey ("*Dorsey*"), Albert and Sathya Furtado ("*Furtado*"), Jim and Carol Maas ("*Maas*"), and Jim Pier ("*Pier*") solely purchased interests in Debtors, Related Debtors, or non-debtor entities.[14]  These investments were made between November 2006 and December 2008.[15]

In the early 2000s, Wallace Bajjali ("*Bajjali*") and David Wallace ("*Wallace*") formed several entities for the purpose of acquiring and developing real estate.[16]  While Fund II was formed primarily for the purpose of acquiring and developing real estate, it also reserved the right to make non-real estate investments.  Fund II was restricted to investing no more than 33% of its capital in any single investment opportunity.[17]  However, in mid-2007, Fund II exceeded the 33% limit

---

[12] Claim No. 14-2.
[13] Claim Nos. 70-1, 71-1, 72-1, 73-1, 77-1.
[14] Claim Nos. 74-1, 75-1, 76-1, 78-1, 79-1.
[15] ECF No. 705 at 46, ¶ 65; ECF No. 720 at 15, ¶ 39; Claim No. 14-2, Part 4 at 1.
[16] ECF No. 705 at 15–21, ¶¶ 4–15.
[17] *Id.* at 17, ¶ 8.

because it invested 41% of its capital in BusinessRadio Network LP ("*BizRadio*"), a radio station.[18]
In 2011, the SEC filed suit against Wallace and Bajjali for exceeding the 33% investing limit.[19]
Wallace and Bajjali settled with the SEC.[20]  Between 2008 and 2009, Fund II also made payments
exceeding $4 million to Industrial Info Resources on a loan made to BizRadio.[21]

In 2008, the Laffer Frishberg Wallace Bajjali Economic Opportunity Fund L.P. ("*LFW
Fund*") was formed to provide debt and equity capital to private and public companies and acquire
and develop real estate.[22]  LFW Fund invested in two projects, the Pearland Office Building and
Murphy Road, a Debtor herein.[23]

In 2008, Debtors and Related Debtors fell victim to the Great Recession.[24]  In response,
Wallace and Bajjali proposed to consolidate Fund I, Fund II, and LFW Fund into a single holding
company, WB Holdings ("*Merger*").[25]  The parties disagree as to whether the Merger was formally
approved by the necessary Debtors and Related Debtors and thus, whether the transaction was
completed.[26]

In 2009, the SEC commenced an action against Albert Kaleta ("*Kaleta*") and Kaleta Capital
Management ("*KCM*") for alleged violations of the Securities Acts of 1933 and 1934, the Ex-
change Act, and the Investment Advisers Act of 1940.[27]  As part of that action, a receiver was
appointed.[28]  The receiver requested to expand the receivership to include the assets of BizRadio
and Daniel Frishberg Financial Inc. d/b/a DFFS Capital Management Inc.[29]  That request was

---

[18] *Id*. at 19–20, ¶ 13.
[19] *Id*. at 37, ¶ 49 (citing ECF Nos. 704-22, 704-23).
[20] *Id.* (citing ECF Nos. 704-24, 704-25).
[21] *Id*. at 20, ¶ 14.
[22] *Id*. at 21, ¶ 15.
[23] *Id.*
[24] *Id*. at 24, ¶ 21.
[25] *Id*. at 21, ¶ 22.
[26] *Compare* ECF No. 705 at 21, ¶ 22 *with* ECF No. 720 at 4–6, ¶¶ 13–15.
[27] ECF No. 705 at 34, ¶ 42.
[28] *Id.* ¶ 43.
[29] *Id*. at 34–35, ¶ 44.

granted.[30]  The receiver then evaluated the potential claims in the SEC action and proposed a set-

tlement agreement.[31]  As part of that settlement, the receiver requested authority to settle all claims

of the receivership estate against Wallace, Bajjali, Fund I, Fund II, LFW Fund, and others.[32]  Over

objections to the proposed settlement, the district court approved the settlement and entered a final

bar order and injunction prohibiting BizRadio noteholders from commencing or continuing any

judicial proceeding against Wallace, Bajjali, Fund I, Fund II, or LFW Fund in connection with the

loans made to BizRadio or its related entities.[33]

In 2011, Porter filed its first bankruptcy case after it faced foreclosure by insiders and eq-

uity holders who acquired and paid off a loan Porter took out for purposes of acquiring and devel-

oping approximately 42 acres of land.[34]  D. Taylor, amongst others, was scheduled as a creditor in

Porter's bankruptcy in the amount of $45,627.14.[35]  D. Taylor also filed a proof of claim for

$45,627.14.[36]  Porter's plan of reorganization was confirmed on June 13, 2012, and a final decree

was entered on January 21, 2014.[37]  D. Taylor never took action to set aside Porter's confirmed

plan of reorganization or the final decree.[38]

In 2012, Wallace and Bajjali planned to launch an initial public offering ("*IPO*") to raise

capital for public-private partnership projects.[39]  Ongoing litigation, however, prevented Wallace

and Bajjali from raising the funds necessary to support the IPO.  To move forward with the IPO,

Wallace and Bajjali proposed the "Make-up Shares Plan" wherein the investors and noteholders of

---

[30] *Id.*
[31] *Id.* at 36, ¶ 46.
[32] *Id.*
[33] *Id.* at 36–37, ¶¶ 47–48.
[34] *Id.* at 28–29, ¶¶ 29–31.
[35] *Id.* (citing ECF No. 703-8).
[36] *Id.* (citing ECF No. 703-9).
[37] *Id.* at 29–30, ¶ 32 (citing ECF Nos. 703-10, 703-11, 703-12).
[38] *Id.*
[39] *Id.* at 30–31, ¶ 35.

Fund I, Fund II, or LFW Fund would receive certain publicly traded securities in the IPO, Wallace

Bajjali Development Partners LP ("*WBDP*").[40]  In consideration of the Make-up Shares Plan, the

investors and noteholders of Fund I, Fund II, and LFW Fund entered into a forbearance agreement

agreeing not to sue certain affiliated parties for a designated amount of time.[41]  Despite the Make-

up Shares Plan and the forbearance agreement, Wallace and Bajjali were not successful in com-

pleting the IPO offering.  Eventually, Debtors filed bankruptcy.

## B.  Procedural Background

1. On March 3, 2015, Porter and Murphy Road filed voluntary chapter 7 petitions.[42]  On April 2, 2015, WB Holdings and Fund II filed voluntary chapter 7 petitions.[43]  On May 22, 2015, upon motion by Lowell T. Cage, the chapter 7 trustee ("*Trustee*"), this Court ordered joint administration of 21 bankruptcy cases, which included the cases of Porter, Murphy Road, WB Holdings, and Fund II.[44]

2. On July 17, 2021, Claimants filed separate proofs of claims in the Porter, Murphy Road, WB Holdings, and Fund II cases.  Those claims are detailed in Table I in Part V of this Memorandum Opinion.

3. On September 22, 2020, Trustee filed objections to Claimants' proofs of claims ("*Trustee's Claim Objections*").[45]  Trustee's Claim Objections, in compliance with Federal Rule of Bankruptcy Procedure 3007, notified Claimants that they had 30 days to file a response or that their claim may be disallowed without a hearing.  A timely response was not filed.

4. On October 29, 2020, this Court entered an order disallowing the claims of Claimants ("*Order Disallowing Claims*").[46]

5. On November 2, 2020, Claimants filed their Motion to Vacate Orders Disallowing Claims and to Accept Late-Filed Responses to Objections ("*Motion to Vacate*").[47]  The same day, D. Taylor, individually filed a response to Trustee's Claim Objection ("*D. Taylor's Individual Response to Objections*")[48] and the other Claimants filed a joint response to the Trustee's Claim Objection ("*Joint Response to Objections*").[49]

---

[40] *Id.* at 31–32, ¶ 37.
[41] *Id.* at 32, ¶ 38 (citing ECF No. 702-13).
[42] 15-31305, ECF No. 1 (Porter); 15-31307, ECF No. 1 (Murphy Road).
[43] 15-31770, ECF No. 1 (WB Holdings); 15-31772, ECF No. 1 (Fund II).
[44] ECF No. 19.
[45] ECF Nos. 578–586, 589.
[46] ECF Nos. 592–596, 598–600, 602–603.
[47] ECF No. 620.
[48] ECF No. 619.
[49] ECF No. 618.

6. On November 4, 2020, this Court held a hearing on the Motion to Vacate and entered an order vacating its Order Disallowing Claims.[50]

7. On July 13, 2021, Trustee filed his Amended Motion for Summary Judgment on the Late-Filed Claims of Claimants ("*Motion*").[51]

8. On July 21, 2021, Claimants filed their Amended Response to Trustee's Motion for Summary Judgment ("*Response*").[52]

9. On July 28, 2021, Trustee filed his Amended Reply to Claimants' Amended Response to Amended Motion for Summary Judgment.[53]

10. On August 19, 2021, Claimants filed their Sur reply Regarding Trustee's Amended Motion for Summary Judgment [Dkt. No. 705].[54]

11. On August 22, 2021, Trustee filed his Amended Objections to Taylor Claimants' Summary Judgment Evidence ("*Trustee's Evidentiary Objection*").[55]

12. On December 14, 2021, this Court held a hearing on Trustee's Motion.  At the conclusion of that hearing, this Court ordered the parties to submit briefing on the narrow issue of standing.

13. On February 14, 2022, Claimants filed their Brief Regarding Standing ("*Claimants' Brief on Standing*").[56]

14. On March 16, 2022, Trustee filed his Memorandum of Law on Standing to Prosecute Causes of Action Asserted by Taylor Claimants ("*Trustee's Memo on Standing*").[57]

### III.   SUMMARY JUDGMENT EVIDENCE

**A.   Trustee's Objections to Claimants' Summary Judgment Evidence**

Claimants submitted several exhibits with their Response to Trustee's Motion.  On August 22, 2021, Trustee filed his "Amended Objections to Taylor Claimants' Summary Judgment Evidence" ("*Trustee's Evidentiary Objections*").[58]  Claimants did not file a response to Trustee's

---

[50] Nov. 4, 2020 Min. Entry; ECF No. 625.
[51] ECF No. 705.
[52] ECF No. 720.
[53] ECF No. 725.
[54] ECF No. 735.
[55] ECF No. 736.
[56] ECF No. 760.
[57] ECF No. 767.
[58] ECF No. 736.

Evidentiary Objections.  Because Claimants have not carried their summary judgment burden regarding standing as discussed below, Trustee's Evidentiary Objections are moot.

Accordingly, Trustee's Evidentiary Objections are overruled as moot.

## IV.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, "identifying each claim or defense—*or the part of each claim* or defense—on which summary judgment is sought."[59] Rule 56, incorporated into contested matters by Federal Rule of Bankruptcy Procedure 9014, states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[60]  In determining whether summary judgment is appropriate, a court need only consider record materials that have been cited, although it may consider other materials in the record.[61]  When considering those materials, a court is not to weigh the evidence, assess its probative value, or resolve factual disputes.[62]  The facts must be reviewed with all "justifiable inferences" drawn in the non-movant's favor.[63]  Nevertheless, factual controversies will be resolved in a non-movant's favor "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[64]  If, however, the record could not lead a rational trier of fact to find for the non-movant, summary judgment is appropriate.[65]  Where the facts are undisputed and only

---

[59] FED. R. CIV. P. 56(a) (emphasis added).

[60] *Id.*

[61] *Id.* 56(c)(3).

[62] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[63] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[64] *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

[65] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

questions of law exist, a court must apply the appropriate law to the facts to determine whether the movant is entitled to judgment as matter of law.[66]

Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial."[67]  The evidentiary support needed to meet the initial summary burden depends on whether the movant bears the ultimate burden of proof at trial.  When the non-moving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial.[68]  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.[69]  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.[70]

## V.  ANALYSIS

Table I below is a demonstrative summary of Claimants' proofs of claim.

---

[66] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991); *see Barnes v. Allstate Ins. Co.*, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").

[67] *Matsushita Elec. Ind. Co.*, 475 U.S. at 586–87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).

[68] *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

[69] *Celotex*, 477 U.S. at 324.

[70] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

TABLE I

| Claimant | WB Holdings Claim Number | Murphy Road Claim Number | Porter Claim Number | Fund II Claim Number | Total Claim Amount | Investment Amount |
|---|---|---|---|---|---|---|
| D. Taylor | 58 | 9* | 14* | 68 | $975,000 | KCM Notes - $375,000 Murphy Road Notes - $400,000 Porter Notes - $36,796.10 Meadowcrest Notes - $163,203.90 |
| Roger G. Taylor, Deceased (Filed by D. Taylor as Trustee) | 59 | 58 | 70 | 69 | $975,000 | KCM Notes - $125,000 LFW Fund - $250,000 BizRadio - $600,000 |
| Ethelyn S. Taylor Trust (Filed by D. Taylor as Trustee) | 60 | 59 | 71 | 70 | $825,000 | KCM Notes - $625,000 LFW Fund - $200,000 |
| B. Taylor | 61 | 60 | 72 | 10* | $1,180,000 | KCM Notes - $575,000 BizRadio Notes - $105,000 LFW Fund Notes - $25,000 Spring Cypress Notes - $100,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | Fund I Notes - $70,000<br>Fund I - $70,000<br>Fund II - $100,000<br>LFW Fund - $135,000 |
| Bass | 62 | 61 | 73 | 71 | $670,000 | KCM Loan - $320,000<br>WBDP Loan - $150,000<br>LFW Fund - $45,000 & $55,000<br>Fund II - $100,000 |
| DePue | 63 | 62 | 74 | 72 | $500,000 | WB Holdings - $50,000<br>Fund II - $450,000 |
| Dorsey | 64 | 63 | 75 | 73 | $100,000 | Fund II - $100,000 |
| Furtado | 65 | 64 | 76 | 74 | $700,000 | BizRadio Houston Equity - $300,000<br>BizRadio Dallas Equity - $300,000<br>Fund I - $100,000 |
| Harrell & Graves | 66 | 65 | 77 | 3* | $300,000 | Fund II - $100,000<br>Fund I Loan (Converted to LFW Fund) - $200,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Maas | 67 | 66 | 78 | 75 | $700,000 | BizRadio Equity - $200,000<br>Fund II - $300,000<br>Fund I - $200,000 |
| Pier | 68 | 67 | 79 | 76 | $100,000 | Fund II - $100,000 |
| **Total** | | | | | **$7,025,000** | |

## A.  Introduction

Trustee asks this Court to summarily find that no genuine issue of material fact exists on Trustee's Claim Objections.[71]  Procedurally, Claimants' proofs of claim ("*PoCs*") are analogous to a complaint in a civil action and Trustee's Claim Objections constitute an answer.[72]  The Joint Response to Objections and D. Taylor's Individual Response to Objections constitute a response to Trustee's Claim Objections.[73]

In their identical PoCs, Claimants generally assert that (1) Wallace and his co-conspirators failed to disclose material information about the investments in Debtors before those investments were made; (2) money was transferred from LFW, Fund II, and WBDP to IIRC to pay personal obligations of Wallace and Daniel Frishberg ("*Frishberg*"), without being disclosed to lenders and investors; (3) money was transferred amongst various Wallace and Bajjali entities, without regard for ownership of the entities involved; (4) ownership of Porter and Murphy Road was never transferred to WB Holdings because the proper documents for the Merger were never executed; (5) even if the Merger was completed, it was unfair to the limited partners and was a  breach of Wallace and Bajjali's fiduciary duties owed to the limited partners; and (6) Porter and Murphy Road knew

---

[71] ECF No. 705 at 14, ¶ 2.

[72] *In re Continental Airlines*, 928 F.2d 127, 129 (5th Cir. 1991).

[73] *See id.*

of and participated in the breaches of fiduciary duty.[74]  Claimants plead the discovery rule and the fraudulent concealment doctrine and maintain that based on either a forbearance agreement or a tolling agreement, any defense based on "timing" was waived by Wallace and Bajjali on behalf of all their affiliated entities.[75]  Lastly, Claimants attach the 8th Amended State Court Petition to their PoCs and incorporate the facts asserted and claims made therein.[76]

The 8th Amended State Court Petition sets forth seven causes of action: (1) negligence; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) knowing participation in breach of fiduciary duty; (5) common law fraud; (6) violations of the Texas Securities Act; and (7) civil conspiracy.[77]  According to Claimants, the acts most relevant to this proceeding are:

> (i) The repayment of a loan from IIRC to BizRadio by the Wallace Bajjali partnerships to avoid personal liability for Wallace in breach of his fiduciary duty;

> (ii) The transfer of ownership of numerous single-purpose entities from three real estate funds to a single holding company called WB Holdings—the Merger—without making full disclosure to interested parties and without corporate approval;

> (iii) The diversion of funds from real estate partnerships to Wallace and Bajjali's personal benefit.

Trustee argues that Claimants' causes of action are barred by the applicable statutes of limitations, that the tolling agreement is not enforceable against Porter and Murphy Road, and that the forbearance agreement expired pre-petition.[78]  Trustee also argues that, as investors in Fund II, Claimants were owed no fiduciary duties by Debtors or Related Debtors and therefore, have no standing to pursue breach of fiduciary duty claims against Debtors or Related Debtors.[79]  Trustee further argues that D. Taylor, individually, is judicially estopped from asserting claims against

---

[74] Claim Nos. 14, 70–79 at 1.
[75] *Id.* at 1–2.
[76] *Id.* at 2.
[77] Claim Nos. 14, 70–79, Part 3 at 57–73.
[78] ECF No.705 at 45–53.
[79] *Id.* at 47–48, ¶ 67.

Porter and WB Holdings.[80]  Lastly, Trustee argues that even if Claimants' claims are allowed, they should be subordinated pursuant to 11 U.S.C. § 510(b).[81]  The Court begins with the question of standing as a threshold issue.

### B. Whether Claimants have standing to pursue their causes of action

Trustee's Motion challenges Claimants' standing only as it relates to the payments remitted by Fund II to IIRC.  Trustee argues that Claimants do not have standing to pursue breach of fiduciary duty claims against Debtors because, as investors in Fund II, Claimants were not owed fiduciary duties by Debtors.[82]  Trustee provides no additional analysis or case law to support his argument.  While a valid challenge, this Court questions Claimants' standing more generally.

A federal court must raise jurisdictional issues *sua sponte* when the parties do not bring the issue to the court's attention.[83]  Subject matter jurisdiction depends, in part, on whether a plaintiff has standing.[84]  This Court originally questioned Claimants' standing to bring their asserted causes of action because it was unclear from Claimants' PoCs—which incorporated the 77-page 8th Amended State Court Petition naming numerous plaintiffs and defendants not involved in this case—whether Claimants had direct or derivative standing to bring their causes of action.  At the hearing on Trustee's Motion, this Court ordered the parties to submit briefing discussing whether Claimants have standing to bring their causes of action against Debtors here.

A party's standing to sue is implicit in the concept of subject-matter jurisdiction and is not presumed; it must be proved.[85]  Claimants "bear the burden of alleging facts that affirmatively

---

[80] *Id.* at 53–54, ¶¶ 78–80.
[81] *Id.* at 54–56, ¶¶ 81–83.
[82] *Id.* at 47–48, ¶ 67.
[83] *Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 545 (5th Cir. 1990).
[84] *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) ("[T]he issue of standing is one of subject matter jurisdiction.").
[85] *See Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 445-46 (Tex. 1993). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (to establish standing a party must show an injury in fact traceable to the conduct of the defendant likely to be redressed by the relief sought).

demonstrate [this Court's] jurisdiction to hear [this] case."[86]  Standing must exist for each cause

of action asserted by Claimants.[87]  To survive a challenge to standing at the summary judgment

stage, Claimants must set forth, by affidavit or other evidence, specific facts, which will be taken

as true for summary judgment purposes, supporting each element of standing.[88]  Claimants sub-

mitted their briefing, attaching only one document, the 10th Amended State Court Petition.

Because state law governs "[i]n deciding questions of law involving partnerships, including

standing,"[89]  Texas law applies here.

> In Texas, the standing doctrine requires a concrete injury to the plaintiff and
> a real controversy between the parties that will be resolved by the court. This par-
> allels the federal test for Article III standing . . . .
>          . . . .
>
> Under Texas law, as under federal law, the standing inquiry begins with the
> plaintiff's alleged injury. The plaintiff must be personally injured — he must plead
> facts demonstrating that he, himself (rather than a third party or the public at large),
> suffered the injury . . . . [The injury] must be concrete and particularized, actual or
> imminent, not hypothetical . . . .
>
> The second element of the standing test requires that the plaintiff's alleged
> injury be fairly traceable to the defendant's conduct . . . .
>
> The third element of standing requires that the plaintiff's alleged injury be
> likely to be redressed by the requested relief, and the plaintiff must demonstrate
> standing separately for each form of relief sought . . . .
>
> The standing inquiry requires careful judicial examination of a complaint's
> allegations to ascertain whether the particular plaintiff is entitled to an adjudication
> of the particular claims asserted.[90]

Claimants generally assert that they "were deprived of their money by being induced to loan or

invest money in several schemes proffered by the conspirators."[91]  Trustee does not dispute that

---

[86] *Wesolek v. Layton*, 871 F. Supp. 2d 620, 628 (S.D. Tex. May 18, 2012).
[87] *McVey v. Johnson (In re SBMC Healthcare, LLC)*, No. 16-2947, 2017 U.S. Dist. LEXIS 71848, at *26 (S.D. Tex. May 11, 2017).
[88] *Lujan*, 504 U.S. at 561 (citing Fed. R. Civ. P. 56(e)).
[89] *Wesolek*, 871 F. Supp. 2d at 627 (citing *Crocker v. Fed. Deposit Insurance Corp.*, 826 F.2d 347, 349 (5th Cir. 1987), *cert. denied*, 485 U.S. 905 (1988)).
[90] *Heckman v. Williamson County*, 369 S.W.3d 137, 154-56 (Tex. 2012) (citations omitted).
[91] ECF No. 760 at 2, ¶ 2.

Claimants lost their investments they made in KCM, BizRadio, or Debtors.[92]  Claimants also generally assert that they have standing to sue Debtors for Debtors' direct actions that caused them harm.

### 1. Negligence

The 8th Amended State Court Petition attached to Claimants' PoCs asserts a cause of action for negligence.  Negligence is mentioned only once in "Claimants' Brief Regarding Standing" ("*Claimants' Brief on Standing*"): "[t]he Claims brought by Claimants are against the Debtors for (1) the Debtors' direct actions (negligence, fraud, securities fraud) . . . ."[93]  Claimants' Brief on Standing does not contain any allegations specific to negligence nor do Claimants cite specific portions of the 8th Amended State Court Petition or "Plaintiffs' and Intervenors' Tenth Amended Petition" ("*10th Amended State Court Petition*").[94]  Federal Rule of Civil Procedure 56 requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ."  Here, it is Claimants' burden to support each element of standing.[95]  Because they have not cited particular parts of materials in the record to support their assertion that they have standing to bring a cause of action directly for negligence, they have not satisfied their burden.[96]

---

[92] *See generally* ECF No. 767.

[93] ECF No. 760 at 8, ¶ 26.

[94] Trustee objects to Claimants' reliance on the 10th Amended State Court Petition, arguing that the 10th Amended State Court Petition should "not be allowed to serve as amending their Proof of Claims without leave from this Court." ECF No. 767 at 8 n.3.  The 10th Amended State Court Petition is not being used to amended Claimants' Proof of Claims.  They are attaching it to their Brief on Standing, which was ordered by this Court at the summary judgment stage.  If anything, the 10th Amended State Court Petition is attached as summary judgment evidence.  Additionally, Trustee previously moved this Court to allow Trustee to supplement his summary judgment evidence with the 10th Amended State Court Petition.  ECF No. 706 at 5–6, ¶ 13.  The Court granted that motion.  ECF No. 718.  Therefore, the 10th Amended State Court Petition is already part of the summary judgment record.

[95] *Wesolek*, 871 F. Supp. 2d at 628.

[96] *See also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.")

Accordingly, to the extent Claimants' PoCs are based on a negligence cause of action, they are disallowed.

### 2. Negligent Misrepresentation

Generally, a claim for negligent misrepresentation may be brought by investors in a company that files for bankruptcy when the claims are based on the defendant's misrepresentations made to the investors.[97]  A direct injury to investors is suffered when the defendant knowingly uses a false statement to induce investment.[98]  Only certain Claimants bring a negligent misrepresentation cause of action against certain Debtors.

- DePue asserts negligent misrepresentation claims against WB Holdings for misrepresentation in connection with his investment in that entity.

- Bass, DePue, Dorsey, Harrell, Maas, Pier, and B. Taylor each assert negligent misrepresentation claims against Fund II in the Fund II Bankruptcy Case (Case No. 15-31772-H1-7) for misrepresentations in connection with their investment in that entity.

- Mass, Furtado, and B. Taylor assert similar claims against WB West Houston Fund in that case for their individual injury.

- D. Taylor asserts claims for negligent misrepresentation against both Porter and Murphy Road for misrepresentations made by those entities in connection with the loans he made to those two entities.

The Court discusses each in turn.

### a. DePue's negligent misrepresentation cause of action against WB Holdings

Claimants' Brief on Standing states, "Randall DePue asserts negligent misrepresentation claims against WB Holdings for misrepresentation in connection with his investment in that entity."[99]  That bald assertion is not accompanied by any factual allegations.  According to DePue's

---

[97] *Magna Equities II, LLC v. Heartland Bank*, No. H-17-1479, 2018 U.S. Dist. LEXIS 145574, at *11 (S.D. Tex. Aug. 27, 2018) (citation omitted).
[98] *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re See Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 586 (2008).
[99] ECF No. 760 at 12, ¶ 37.

PoC, he made a $50,000 investment in WB Holdings.  DePue's PoC seeks recovery of that $50,000 because "[n]one of the investment has been returned."[100]  The PoC further states "Messrs. Wallace and Frishberg and their co-conspirators failed to disclose material information about the investments before they were made."[101]  The PoC does not identify who the "co-conspirators" were or what material information went undisclosed.[102]  Claimants' Brief on Standing asserts generally that "[t]he WBL Partnerships conspired with Wallace to attract Claimants' capital . . . ."[103]  Claimants cite no evidence in support of their assertion.

Under Texas law, as under federal law, the "fairly traceable" element considers whether the injury is one "that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."[104]  The allegation that WB Holdings made a negligent misrepresentation "in connection with" DePue's investment in WB Holdings is merely conclusory.  Absent specific facts derived from evidence to support the allegation, Claimant DePue has not sufficiently demonstrated that the loss of his investment in WB Holdings is fairly traceable to WB Holdings' actions and not those of non-parties such as Wallace, Frishberg, or Laffer.

Accordingly, to the extent Claimant DePue's PoC is based on a cause of action for negligent misrepresentation against WB Holdings, it is disallowed.

### b. Bass, DePue, Dorsey, Harrell, Maas, Pier, and B. Taylor's negligent misrepresentation cause of action against Fund II

Claimants' Brief on Standing states, "[t]he Bass, DePue, Dorsey, Harrell, Maas, and Pier families, and Blake Taylor, each assert negligent misrepresentation claims against WBIF2 in the

---

[100] Claim No. 62-1 at 1.
[101] *Id.*
[102] *Id.*
[103] ECF No. 760 at 5–6, ¶ 14.
[104] *Heckman*, 369 S.W.3d at 155 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

WBIF2 Bankruptcy (Case No. 15-31772-H1-7) for misrepresentations in connection with their investment in that entity."[105]  Each of those Claimants invested money in Fund II and seeks monetary relief for loss of that investment.  Claimants' Brief on Standing alleges that Fund II "raised money from investors to further Wallace's, Frishberg's, and Laffer's personal agendas, which included operating a radio station to attract capital and developing real estate for their own benefit"[106] and that "[t]he WBL Partnerships conspired with Wallace to attract Claimants' capital . . . ."[107] None of those factual allegations mention a misrepresentation "in connection with" Claimants' investments in Fund II.  Claimants provide no affidavits or other competent summary judgment in support of their allegation.

Absent specific facts supporting the allegation, Claimants Bass, DePue, Dorsey, Harrell, Maas, Pier, and B. Taylor have not sufficiently demonstrated that the loss of their investments in Fund II is fairly traceable to Fund II's actions, and not those of non-parties such as Wallace, Frishberg, or Laffer.

Accordingly, to the extent Claimants Bass, DePue, Dorsey, Harrell, Maas, Pier, and B. Taylor's PoCs are based on a negligent misrepresentation cause of action against Fund II, they are disallowed.

### c.  Mass, Furtado, and B. Taylor's claim for negligent representation against WB West Houston Fund

Claimants' Brief on Standing states "[t]he Mass and Furtado families, and Blake Taylor assert similar claims against WB West Houston Fund in that case for their individual injury.  The Trustee has not objected to those claims."  WB West Houston Fund is not a Debtor in the instant action.

---

[105] ECF No. 760 at 12, ¶ 38.
[106] *Id.* at 3, ¶ 5.
[107] *Id.* at 6, ¶ 14.

Accordingly, to the extent Claimants Mass, Furtado, and B. Taylor bring a negligent misrepresentation cause of action for their investment in WB West Houston Fund for representations made by WB West Houston Fund, their PoCs based on that cause of action are disallowed against Debtors here.

**d.  D. Taylor's claim for negligent misrepresentation against Porter and Murphy Road**

D. Taylor asserts claims for negligent misrepresentation against Porter and Murphy Road for misrepresentations made by those entities in connection with the loans he made to those two entities.[108]  D. Taylor loaned $400,000 to Murphy Road and $36,796.10 to Porter.[109]  Trustee's Motion for Summary Judgment states, "Trustee does not object to [Claim Nos. 14 and 9 filed by D. Taylor in the Porter and Murphy Road estates] as they relate to promissory notes owed by Porter and Murphy Road for unpaid loans from Taylor."[110]

Accordingly, D. Taylor's Claim No. 9-2 for $400,000 against Murphy Road and Claim No. 14-2 for $36,796.10 against Porter are allowed to the extent they are based on unpaid promissory notes and not a cause of action for negligent misrepresentation.

Claimants' failure to meet their summary judgment burden regarding standing as to all other negligent misrepresentation causes of action by any Claimant against any Debtor results in their PoCs being disallowed to the extent they are based on such cause of action.

Accordingly, all other PoCs based on a negligent misrepresentation cause of action asserted by any Claimant against any Debtor are disallowed.

**3.  Breach of Fiduciary Duty**

---

[108] *Id.* at 12, ¶ 40.
[109] Claim No. 14-2, Part 4.
[110] ECF No. 705 at 9 n.1.

The 8th Amended State Court Petition incorporated by Claimants' PoCs states a cause of action for breach of fiduciary duty. Claimants now assert that they are not bringing any such cause of action against Debtors here and that any cause of action for breach of fiduciary duty is controlled by Trustee.[111]

Accordingly, to the extent Claimants' PoCs are based on a breach of fiduciary duty cause of action, they are disallowed.

### 4. Knowing Participation in Breach of Fiduciary Duty

Each Claimant brings a cause of action for knowing participation in breach of fiduciary duty against each Debtor.[112] Knowing participation in fiduciary breach is a derivative claim and requires an underlying breach of fiduciary duty.[113] Claimants allege that Debtors "knowingly participated in Wallace's breaches of his fiduciary duties as Claimants' formal Agent and *de facto* financial advisor."[114] Claimants also allege that "David Wallace, Costa Bajjali, Daniel Frishberg, and Al Kaleta owed each of the Taylor Claimants a fiduciary duty as their financial advisor and/or agent" and that Debtors participated in those breaches.[115] More specifically, Claimants allege that Wallace and Frishberg breached their duties of candor and loyalty to Claimants during the Merger transaction and that Debtors "knowingly went along with the transactions without regard to the rights and interests of Claimants."[116]

At the summary judgment stage, a nonmovant can no longer rest on mere allegations and must set forth specific facts by affidavit or other evidence.[117] Claimants did not cite any affidavits

---

[111] ECF No. 760 at 13, ¶ 42.

[112] *Id.* at 14, ¶ 47.

[113] *Mesilla Off. Sols., LLC v. HGS Healthcare, LLC*, No. 4:20-CV-386-SDJ, 2022 U.S. Dist. LEXIS 30267, at *9 (E.D. Tex. Feb. 21, 2022) (quoting *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied)).

[114] ECF No. 760 at 6, ¶ 14.

[115] *Id.* at 15, ¶ 48.

[116] *Id.* at 15, ¶ 49.

[117] *Lujan*, 504 U.S. at 561.

or other evidence to support the elements of standing for their knowing participation in breach of fiduciary duty cause of action.

Accordingly, to the extent Claimants' PoCs are based on a cause of action for knowing participation in breach of fiduciary duty against Debtors, they are disallowed.

**5.    Fraud**

Claimants' Brief on Standing alleges that the Merger was "void as a fraud on the WBL Partnerships and their partners"[118] and that "[t]he fraud perpetrated by the co-conspirators, including the Debtors, caused the Taylor Claimants to lose the entirety of their investments in KCM, BizRadio, non-Debtors LFW Fund and Wallace Bajjali Development Partners, L.P., and Debtors WBIF2, WB Holdings, Porter Development and WB Murphy Road."[119]  These allegations are made by all Claimants against all Debtors.  Nevertheless, in a later section of Claimants' Brief on Standing titled "Fraud," Claimants state that "certain claimants are bringing fraud claims against the Debtors" and enumerate the following:

- D. Taylor in his individual capacity brings a cause of action for fraud against Porter and Murphy Road for fraud in the sale of his notes;

- Bass, Depue, Dorsey, Harrell, Maas, Pier, and B. Taylor bring a cause of action for fraud against Fund II for their investments in Fund II;

- Depue brings a cause of action for fraud against WB Holdings for fraud in connection with his investment in WB Holdings.[120]

Even though Claimants' Brief states that only D. Taylor in his individual capacity, Bass, Depue, Dorsey, Harrell, Maas, and Pier are brining fraud claims against Debtors, the Court will nevertheless address the fraud claim lodged by all Claimants in turn.

**a.    Alleged fraud in the Merger**

---

[118] ECF No. 760 at 3, ¶ 6.
[119] *Id.* at 6, ¶ 16.
[120] *Id.* at 16, ¶ 52.

Claimants allege that the failure of Debtors and their non-party co-conspirators to inform Claimants that the Merger (1) would wash out intercompany loans that had defrauded investors; (2) that Wallace diverted millions of dollars from the WBL Partnerships to pay his personal indebtedness to IIRC; and (3) that the WBL Partnerships had diverted up to 50% of their cash assets to BizRadio was a breach of fiduciary duty and fraudulent transaction.[121]

Trustee argues that Claimants' fraud claim based on the Merger is really a disguised fraudulent transfer claim and as such is derivative and thus may only be prosecuted by Trustee.[122]  Trustee asserts that Claimants are actually challenging the transfers of properties and interests to WB Holdings as fraudulent.[123]  In the alternative, Trustee argues that Claimants cannot prevail on their fraud claim without showing injury to Debtors.[124]

Whether Claimants' cause of action is for common law fraud or fraudulent transfer, the analysis is the same regarding the alleged injury: the Court must consider the nature of the injury alleged by Claimants and the relationship between Debtors and that injury.[125]  "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate."[126]  "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate."[127]

---

[121] ECF No. 760 at 3, ¶ 6.
[122] ECF No. 767 at 21–22, ¶ 41.
[123] *Id.*
[124] *Id.* at 22–23, ¶ 43.
[125] *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584.
[126] *In re Educators Group Health Trust*, 25 F.3d at 1284 (citations omitted).
[127] *Id.*

Investors may own claims resulting from fraud or misrepresentation that occurred at the time they made their investment.[128]  Claimants allege that the Merger "was void as a fraud on the WBL Partnerships and their partners."[129]  And as cited in Trustee's Memo on Standing, the 8th Amended State Court Petition appended to Claimants' PoCs states that "[t]he [M]erger ultimately led to the collapse of all the Wallace Bajjali partnerships."[130]  Claimants' allegations themselves assert that Debtors were harmed by the Merger because it caused them to collapse.  Claimants' harm—loss of their investments—resulted from the harm to Debtors.  The wrong was done to Debtors, even if Claimants were also harmed by that wrong.[131]  Because Claimants' allegations alone defeat the first element of standing—a particularized injury—Claimants have not met their summary judgment burden to show that they have standing to bring a direct cause of action for common law fraud against Debtors based on the Merger.

Accordingly, to the extent Claimants' PoCs are based on a cause of action for common law fraud stemming from the Merger, they are disallowed.

**b.  D. Taylor's cause of action for fraud against Porter and Murphy Road**

D. Taylor asserts a cause of action for fraud against Porter and Murphy Road for the sale of his promissory notes.[132]  As discussed above, "Trustee does not object to [Claim Nos. 14 and 9 filed by D. Taylor in the Porter and Murphy Road estates] as they relate to promissory notes owed by Porter and Murphy Road for unpaid loans from Taylor."[133]

---

[128] *Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 837 (Bankr. S.D. Tex. 2012).
[129] ECF No. 760 at 3, ¶ 6.
[130] ECF No. 767 at 20, ¶ 38.
[131] *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).
[132] ECF No. 760 at 16, ¶ 52(i).
[133] ECF No. 705 at 9 n.1.

Accordingly, D. Taylor's Claim No. 9-2 for $400,000 against Murphy Road and Claim No. 14-2 for $36,796.10 against Porter are allowed to the extent they are based on unpaid promissory notes and not on a cause of action for fraud against Porter and Murphy Road.

### c. Bass, Depue, Dorsey, Harrell, Maas, Pier, and B. Taylor's cause of action for fraud against Fund II and DePue's cause of action for fraud against WB Holdings

Citing *In re NC12, Inc.*, Claimants' Brief on Standing makes the conclusional assertion that "[t]he fraud claims asserted by the Taylor Claimants are personal to them for the losses they sustained individually investing in each of the Debtors."[134]  In *In re NC12, Inc.*, the intervenors, who were shareholders, alleged, inter alia, that the defendants solicited investments by falsely representing the company's worth on two occasions.[135]  The court held that the shareholders could not recover damages for the difference between the price they paid for the shares they purchased and what the shares would have been worth if not for the alleged post-purchase misconduct in the operation of the corporations.  However, the court held, the shareholders could recover damages for the amount they allegedly overpaid as a result of the officers and directors' alleged misrepresentations.[136]  The court concluded "[w]ith these limitations, the [shareholders'] claims for harm due to fraudulently induced investment are independent of any harm directly to [the debtor]; indeed, [the debtor] benefitted from the [shareholders'] investments by having their cash.[137]

Here, Claimants seek recovery of their entire investment in Debtors,[138] but offer no information or evidence about the misrepresentations Fund II or WB Holdings allegedly made that induced Claimants to invest in those entities.  Moreover, Claimants' Response to Trustee's Motion for Summary Judgment repeatedly admits that their investments in the various WBL partnerships,

---

[134] ECF No. 760 at 16, ¶ 53.
[135] 478 B.R. at 836.
[136] *Id.* at 837.
[137] *Id.*
[138] Claim 61-1.

to include Fund II and WB Holdings, were safe, and in fact "going strong" until Wallace resigned in early 2015.[139]

As found in *In re NC12, Inc.*, damages for the difference between the price paid for shares and what the shares would have been worth if not for post-purchase misconduct is not recoverable by shareholders. Despite Claimants' general allegation that their harm stems from being induced to invest by Fund II and WB Holdings' misrepresentations, Claimants' earlier position that their investments were "going strong" until at least 2015,[140] when those investments were made between 2006 and 2008, indicates that their loss resulted from post-investment mismanagement of Debtors. Damages arising from post-investment mismanagement of a debtor is not a personal injury because the harm caused thereby is suffered by the entity, here, WB Holdings and Fund II, and only indirectly by the investors, here, Claimants. Absent any specific facts supporting Claimants Bass, DePue, Dorsey, Harrell, Maas, Pier, and B. Taylor's assertion that they suffered a personal injury from Fund II and WB Holdings' alleged fraud, Claimants lack standing to bring a cause of action for common law fraud directly.

Accordingly, to the extent Claimants Bass, Depue, Dorsey, Harrell, Maas, Pier, and B. Taylor's PoCs are based on a cause of action for fraud against Fund II, they are disallowed. To the extent Claimant DePue's PoC is based on a cause of action for fraud against WB Holdings, it is disallowed.

### 6. Conspiracy to Commit Fraud

---

[139] *See* ECF No. 720 at 6–7, ¶ 19 (regarding Fund II, when the SEC brought an enforcement action against Wallace and Bajjali Claimants stated, "[i]n fact, it turns out that [Claimants'] investments were still viable at that time."), *id.* at 8, ¶ 23 (regarding Fund II, WB Holdings, and others, Claimants stated, "[u]ntil Wallace resigned in early 2015, the Joplin and Amarillo contracts were still in place and the IPO was still in progress, and so the 'injury' from the conspirators' bad acts had not yet occurred. Up until that point in time, it was still likely that Claimants would receive a return of their money plus a return[]" and "[o]nce Wallace and Bajjali resigned, and put the key partnerships into Bankruptcy, Claimants suffered the 'injury' of the loss of their investment. Up until that point, their investments were still going strong.") (citations omitted).
[140] See note 140.

Claimants set forth several allegations of conspiracy.

- Furtado and Maas bring a conspiracy claim against Debtors for money they invested in BizRadio;

- Bass, B. Taylor, and D. Taylor, individually and as trustee of the R. and E. Taylor Trusts bring a conspiracy claim against Debtors for money they lost in the KCM Notes and the loans they made to various WBL partnerships;

- Bass, Harrell, B. Taylor, and D. Taylor as trustee of the R. and E. Taylor Trusts bring a conspiracy claim against Debtors for loss of the money they invested in LFW Fund.[141]

Claimants incorporate paragraphs 279–288 and 298–301 of the 10th Amended State Court Petition.[142] Claimants argue that the conspiracy to commit fraud claims laid out in those paragraphs include conspiracy to commit fraud in the inducement, conspiracy to commit fraud in the transaction, and conspiracy to commit fraud in the operation of the WBL Partnerships, WB Real Estate Holdings, Porter Development, WB Murphy Road, KCM, and BizRadio.

Texas law is clear that "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."[143] Claimants' conspiracy claims are based on alleged fraud (i.e., fraud in the inducement, fraud in the transaction, fraud in the operation); however, as discussed above, all fraud claims have been disallowed, thus the conspiracy claims cannot stand.

Accordingly, to the extent Claimants' PoCs are based on a conspiracy to commit fraud cause of action, they are disallowed.

### 7. Aiding and Abetting Securities Fraud

Claimants bring a cause of action for aiding and abetting securities fraud against Debtors, alleging that they aided and abetted multiple counts of securities fraud in the sale of investment

---

[141] ECF No. 760 at 14, ¶ 46.
[142] *Id.* at 17, ¶ 55 (citing ECF No. 760-1).
[143] *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

vehicles, such as promissory notes.[144]  Claimants incorporate paragraphs 295–297 of the 10th Amended State Court Petition.[145]  The allegations in paragraphs 295–297 state that the Wallace-Bajjali entities "aided and abetted violations of Article 581-33 of the Texas Securities Act by making untrue statements of material fact, or omitting to state material facts necessary in order to make the statements which were made not misleading, in light of the circumstances in which the statements were made."[146]  The plaintiffs in the 10th Amended State Court Petition sought damages, including attorney's fees permitted by the Texas Securities Act and rescission damages and prejudgment interest.[147]  Claimants' Brief on Standing further states that all Debtors are jointly and severally liable with Wallace for fraud of inducement in convincing Claimants to invest in LFW Fund, Fund II, KCM, and other entities.[148]

Other than citing to the 10th Amended State Court Petition, Claimants offer no affidavits or evidence to support each element of standing for the relief they seek pursuant to their aiding and abetting cause of action.  A party cannot rely on pleadings as evidence to defeat summary judgment.[149]  Therefore, Claimants have not put forth competent summary judgment evidence to satisfy their summary judgment burden regarding standing to bring this cause of action directly.

Accordingly, to the extent Claimants' PoCs are based on an aiding and abetting securities fraud cause of action against Debtors, they are disallowed.

Because Claimants failed to meet their burden regarding standing to bring the above causes of action, resulting in their PoCs being disallowed to the extent based on those causes of action, Trustee's arguments regarding statute of limitations, judicial estoppel, and subordination are moot.

---

[144] ECF No. 760 at 19, ¶ 59.
[145] *Id.*
[146] ECF No. 760-1 at 71, ¶ 295.
[147] *Id.* at 72, ¶ 297.
[148] ECF No. 760 at 19, ¶ 59.
[149] *Howard v. Eckerd (In re Eckerd)*, No. 18-4092, 2019 Bankr. LEXIS 3273, at *13 (Bankr. E.D. Tex. Oct. 16, 2019) (quoting *Wright v. Farouk Systems, Inc.*, 701 F.3d 907, 911 n.8 (11th Cir. 2012)).

## VI.   CONCLUSION

A Judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED May 13, 2022

_____

Eduardo Rodriguez
United States Bankruptcy Judge