United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 09, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 15-31305** |
| **PORTER DEVELOPMENT PARTNERS, LLC** | § | |
| **and** | § | |
| **WB MURPHY ROAD DEVELOPMENT, LLC** | § | |
| **and** | § | |
| **CREEKMONT PLAZA PARTNERS, L.P.** | § | |
| **and** | § | |
| **CREEKMONT PLAZA PARTNERS GP, LLC** | § | |
| **and** | § | |
| **REPLACEMENT SANCTUARY GP, LLC** | § | |
| **and** | § | |
| **WB SANCTUARY GP, LLC** | § | |
| **and** | § | |
| **WB CHANCEL GP, LLC** | § | |
| **and** | § | |
| **WB 2610, LLC** | § | |
| **and** | § | |
| **MEADOW CREST DEVELOPERS 226, L.P.** | § | |
| **and** | § | |
| **MEADOW CREST DEVELOPERS GP, LLC** | § | |
| **and** | § | |
| **MORTON & PORTER, L.P.** | § | |
| **and** | § | |
| **MORTON & PORTER GP, LLC** | § | |
| **and** | § | |
| **RIATA WEST INVESTMENT, LLC** | § | |
| **and** | § | |
| **LAKECREST VILLAGE INVESTMENTS, LLC** | § | |
| **and** | § | |
| **WB REAL ESTATE HOLDINGS, LLC** | § | |
| **and** | § | |
| **US PUBLIC - PRIVATE REAL ESTATE FUND I, LP** | § | |
| **and** | § | |
| **WALLACE BAJJALI INVESTMENT** | § | |

**FUND II, LP**
**and**
**WEST HOUSTON WB REALTY FUND, LP**
**and**
**WBIF II GP, LLC**
**and**
**WB SUBSTITUTE GP, LLC**
**and**
**PPP MANAGEMENT, LLC,**
      **Debtors.**                         **Jointly Administered**
                                                   **CHAPTER 7**

## <u>MEMORANDUM OPINION</u>

In his Motion for Summary Judgment, Lowell T. Cage, Chapter 7 Trustee, seeks to disallow $7,025,000.00 in claims filed by James Pier, Michael Dorsey, Jim Maas, Jimmy Harrell & Carolyn Graves, Albert & Sathya Furtado, Ron & Emily Bass, Randall DePue, Blake Taylor, and Donald Taylor individually and as Trustee for the Ethelyn Taylor Trust and the Roger Taylor Trust against the bankruptcy estates of Porter Development Partners, LLC, WB Real Estate Holdings, LLC, WB Murphy Road Development, LLC, and Wallace Bajjali Investment Fund II, LP. For all of the reasons stated in this Memorandum Opinion, summary judgment is granted in part and denied in part.

## I.    Background

1. For the purposes of this Memorandum Opinion and, to the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the background facts in this Court's May 13, 2022 and January 25, 2023 Memorandum Opinions.[1]

2. On November 27, 2023, Lowell T. Cage, Chapter 7 Trustee ("*Trustee*") filed his "Trustee's Second Amended Motion for Summary Judgment on the Late-Filed Claims of the Taylor Claimants and Memorandum of Law in Support Thereof"[2] ("*MSJ*").

3. On December 27, 2023, James Pier, Michael Dorsey, Jim Maas, Jimmy Harrell & Carolyn Graves, Albert & Sathya Furtado, Ron & Emily Bass, Randall DePue, Blake Taylor, and Donald Taylor individually and as Trustee for the Ethelyn Taylor Trust and the Roger Taylor Trust (collectively, the "*Claimants*") filed their, "Taylor Claimants' Response to

---

[1] ECF No. 792 and 886.
[2] ECF No. 931.

Trustee's Second Amended Motion for Partial Summary Judgment & Memorandum of Law in Support"[3] ("*Response*").

4. On January 23, 2024, Trustee filed his, "Lowell T. Cage, Trustee's Reply to Taylor Claimants' Response to Second Amended Partial Motion for Summary Judgment"[4] ("*Reply*").

5. On February 6, 2024, Claimants filed their, "Taylor Claimants' Surresponse to Trustee's Second Amended Motion for Partial Summary Judgment & Memorandum of Law in Support"[5] ("*Sur-Reply*").

6. On February 15, 2024, Trustee filed his, "Supplement to Trustee's Second Amended Motion for Summary Judgment on the Late-Filed Claims of the Taylor Claimants and Memorandum of Law in Support Thereof"[6] ("*MSJ Supplement*").

7. On February 22, 2024, Claimants filed their, "Taylor Claimants' Response to Trustee's Supplement to Second Amended Motion for Partial Summary Judgment & Memorandum of Law in Support"[7] ("*MSJ Supplement Response*").

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[8] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (B) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and allowance and disallowance of claims."[9] This Court may only hear a case in which venue is proper.[10] Pursuant to

---

[3] ECF No. 934.

[4] ECF No. 942.

[5] ECF No. 944.

[6] ECF No. 948.

[7] ECF No. 949.

[8] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[9] 11 U.S.C. § 157(b)(2); s*ee also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

[10] 28 U.S.C. § 1408.

28 U.S.C. § 1408(1), venue of this jointly administered bankruptcy proceeding is proper.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[11] 28 U.S.C. § 157 provides a non-exclusive list of matters considered core proceedings. Included in that list and relevant here is the allowance or disallowance of claims against the estate.[12] However, the Claimants' claims are solely based on state law causes of action, which are non-core. "Whether a pre-petition state law claim constitutes either a core or non-core proceeding depends upon (1) whether the creditor filed a proof of claim with the bankruptcy court and (2) the relationship between the state action and proof of claim."[13] "Where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C. § 157(b)(2)(B)."[14] Because the Taylor Claimants' state law causes of action are asserted as the basis of their claims, this is a core proceeding and thus, this Court has constitutional authority to enter a final judgment.

However, even if the state law nature of the Claimants' causes of action made this a non-core proceeding, the Trustee explicitly consented to this Court's entry of final judgments on non-core matters by filing a Notice of Consent[15] and Claimants implicitly consented.[16] Claimants never

---

[11] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668-72, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015).
[12] 28 U.S.C. § 157(b)(2)(A), (B), (O).
[13] *Barbknecht Firm, P.C. v. Keese* (In re Keese), No. 18-40817, 2021 Bankr. LEXIS 478, at *54 (Bankr. E.D. Tex. Feb. 28, 2021) (quoting *Ramco, Inc. v. Charles Guy Evans & Sons, Inc.* (In re Charles Evans Trucking Inc.), 595 B.R. 715, 722-23 (Bankr. S.D. Miss. 2018)).
[14] *In re Charles Evans Trucking Inc.*, 595 B.R. at 723 (quoting *In re Best Reception Sys.*, 220 B.R. 932, 944-45 (Bankr. E.D. Tenn. 1998) (collecting cases including *Wood v. Wood* (In re Wood), 825 F.2d 90, 97-97 (5th Cir. 1987))).
[15] ECF No. 634.
[16] *Sharif*, 575 U.S. at 683 ("Sharif contends that the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be express. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute 28 U.S.C. § 157, mandate express consent . . . .").

filed a notice of non-consent and have appeared before this Court and engaged in motions practice, without ever objecting to this Court's authority to enter a final judgment. Therefore, this Court has consent, both express and implied, to enter a final judgment in this case.

### III.   ANALYSIS

#### A.  Rule 56 Standard

Federal Rule of Civil Procedure ("*Rule*") 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[17] Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7056 incorporates Rule 56 in adversary proceedings. Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] Courts employing this standard of review must determine "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon evidence before the court."[20] To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law.[21] A material fact is one "that might affect the outcome of the suit under the governing law."[22]

---

[17] FED. R. CIV. P. 56(a) (emphasis added).
[18] *Id.*
[19] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).
[20] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).
[21] *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).
[22] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998).

A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving parties.[23]

Rule 56 creates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[24] If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.[25] When there is no genuine issue for trial, the Court should grant summary judgment.[26] In determining whether summary judgment is appropriate, a court is not to weigh evidence, assess its probative value, or resolve factual disputes,[27] but the facts must be reviewed with all "justifiable inferences" drawn in non-movants' favor.[28] Nevertheless, factual controversies will be resolved in non-movants' favor "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[29] If, however, the record could not lead a rational trier of fact to find for non-movants, summary judgment is appropriate.[30] While the Court may consider other materials in the record, it need only consider those actually cited.[31] Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the moving party is entitled to judgment as a matter of law.[32]

## B.  Trustee's MSJ

---

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[24] *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).

[25] *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

[26] *Id.*

[27] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[28] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

[29] *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).

[30] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986).

[31] *Id.* (citing FED. R. CIV. P. 56(c)(3)).

[32] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) ("Summary judgment is appropriate where only issue before court is pure question of law."); *see Barnes v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 51218, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").

Trustee asserts that the claims asserted against Debtors' estates by Claimants as (1) KCM and Biz Radio equity plaintiffs and as (2) WBL Partnership plaintiffs as delineated in a certain petition filed in the 61st Judicial District of Harris County attached to their proofs of claim ("*State Court Petition*")[33] should be disallowed.[34] The Court will consider each in turn.

### 1. Claims asserted as KCM and Biz Radio equity plaintiffs

Trustee asserts that (a) the Claimants' causes of action asserted as KCM and BizRadio equity plaintiffs against the estate for conspiracy to commit fraud, breach of fiduciary duty, and securities fraud ("*Conspiracy Claims*") are time-barred by applicable statute of limitations, and thus, Claimants' proofs of claim predicated on the Conspiracy Claims should be disallowed.[35] Claimants have previously stipulated that their claims brought as KCM and BizRadio equity plaintiffs are limited to their Conspiracy Claims.[36] Claimants disagree that the Conspiracy Claims are time barred and alternatively assert that, should their claims be barred, that either (b) the discovery rule tolled the limitations period on their Conspiracy Claims, (c) the fraudulent concealment doctrine extended the limitations period on the Conspiracy Claims, or (d) certain tolling and forbearance agreements extended limitations on the Conspiracy Claims.[37] The Court will consider each in turn.

### a. Statute of limitations

Trustee contends that the limitations period began to run on the Conspiracy Claims no later than when a certain SEC enforcement action commenced against Kaleta and his company KCM on November 13, 2009, ("*SEC Enforcement Action*") and are thus barred by the applicable three

---

[33] *See e.g.*, ECF Nos. 931-40-41.
[34] *See* ECF No. 931.
[35] ECF No. 931 at 21-22.
[36] ECF No. 760 at 13, ¶ 45.
[37] ECF No. 934.

and four year statute of limitations pursuant to Tex. Civ. Pac. & Rem Code §16.004(a)(4), (5) and Tex. Rev. Civ. Stat. art. 581-33(H).[38] Claimants alternatively assert that the limitations period did not begin until David Wallace ("*Wallace*") and Costa Bajjali ("*Bajjali*") resigned in January of 2015, shortly before Debtors filed their respective bankruptcies.[39]

In Texas, conspiracy claims are secondary claims that take the limitations period of the underlying tort that is the object of the conspiracy.[40] Pursuant to Tex. Gov't Code § 4008.062(a)(1)[41] and Tex. Civ. Pac. & Rem Code §16.004(a)(4), (5), the statute of limitations on a securities fraud claim is three years, fraud is four years, and a breach of fiduciary duty claim is four years respectively. For purposes of determining when limitations period begins, Texas courts utilize the "legal injury rule."[42] In other words, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."[43] Although Claimants devote significant discussion attempting to argue for a different standard, the Court has already previously decided this is the applicable standard and is thus law of the case.[44]

First, it is important to note that pursuant to § 108(c), limitations periods are tolled post-petition, so the operative inquiry, putting questions of tolling aside, is if the Conspiracy Claims accrued within three or four years of March 3 and April 2 of 2015, when Debtors filed each of their petitions.[45] As discussed, Trustee contends that the Conspiracy Claims accrued no later than

---

[38] ECF No. 931 at 14, 21-22.
[39] ECF No. 934 at ¶ 42.
[40] *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136 (Tex. 2019).
[41] formerly Tex. Rev. Civ. Stat. art. 581-33(H).
[42] ECF No. 435 (citing *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).
[43] *Id.*
[44] *See id. See also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").
[45] *See* Case Nos. 15-31305, 15-31307, 15-31770, 15-31772 at ECF No. 1.

when the SEC Enforcement Action commenced November 13, 2009.[46] Notably, Claimants, for all of their discussion of the law, do not factually dispute that the actions giving rise to the SEC Enforcement Action caused injury to them, as stated in their Response:

> The violations at issue in the SEC Enforcement Action represent one component of the Taylor Claimants' claims – that Messrs. Wallace and Bajjali and Debtor WBIF2 and LFW Fund breached their obligations to Claimants by wrongfully investing too much of Claimants' money in BizRadio. By making false representations to Claimants that they would not exceed various investment concentrations, *they harmed Claimants*.[47]

As discussed, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."[48] Thus, even though all of the harm resulting from the alleged Conspiracy Claims had not yet accrued, it is undisputed that the alleged wrongful acts and resulting damages began at least by the time the SEC Enforcement action was initiated on November 13, 2009.[49]

Nonetheless, Claimants attempt to argue that a "legal injury" did not occur until 2015 when Wallace and Bajjali resigned from WBL Partnerships.[50] Claimants principally rely on *Atkins v. Crosland*[51] and *Bauman v. Centex Corp.*,[52] (discussing *Atkins*) in support of their proposition that the legal injury underlying the Conspiracy Claims did not occur until 2015.[53] Claimants contend that, similar to *Bauman*, that although misrepresentations were made long before Wallace and Bajjali resigned from WBL Partnerships, that the actual injury did not occur until their resignation because there was still a possibility that their investments would be recovered up to that point.[54]

---

[46] ECF No. 931 at 14, 21-22.
[47] ECF No. 931 at 22; ECF No. 934, ¶¶ 17, 24 (emphasis added).
[48] *Id.*
[49] ECF No. 931 at 22; ECF No. 934, ¶¶ 17, 24.
[50] ECF No. 934 at ¶ 40.
[51] 417 S.W.2d 150 (Tex. 1967).
[52] 611 F.2d 1115 (5th Cir. 1980).
[53] ECF No. 934 at 14-16.
[54] *Id.* at 15-16, ¶ 40.

Claimants' reliance on *Bauman* is, however, misplaced. *Bauman* discusses an exception to the general rule in Texas that a tort cause of action accrues when it is committed even if not all of the damages have yet been ascertained.[55] *Bauman*, discussing the Texas Supreme Court case in *Atkins*, notes that when it comes to torts predicated on misrepresentations, that:

> Misrepresentation in itself is not a completed wrong until there is an invasion of some right of the plaintiff. Texas courts have held that (a) false statement, alone, does not create a cause of action for fraud . . . there must be reliance by the complainant to his detriment. Furthermore, the general rule is that there can be no legal or actionable fraud unless the act Resulted in injury to the person defrauded.[56]

Notably overlooked in Claimants' Response, however, is that the *Atkins* exception is only applicable to misrepresentations and acts that are not unlawful and do not result in reliance by the complainant to their detriment.[57] Here, it is undisputed, and in fact it is Claimants' position in the underlying state court lawsuit, that the investments in Biz Radio through KCM were in fact a Ponzi scheme, and that heavy losses were suffered by the time the SEC Enforcement Action began.[58] A further example from Claimants' state court petition demonstrating this position is as follows:

> BizRadio was a financial disaster as a stand-alone entity, losing millions each year. Indeed, the only value in BizRadio was the new investors that it attracted to KCM, DFFS and the Wallace Bajjali partnerships. BizRadio was simply the fuel for a Ponzi scheme whose survival was predicated on the continual investment of substantial new capital each year to fund millions in annual losses. Indeed, Daniel Frishberg, the principal of BizRadio, referred to the station as a "loss leader" for his Registered Investment Advisory business – DFFS. Investors' funds raised by Defendants and their confederate, Albert Kaleta, flowed freely to the financially insecure BizRadio in a desperate attempt to keep the BizRadio pipeline of new investors open so that they could be steered to KCM, DFFS and the Wallace Bajjali Partnerships.[59]

---

[55] *Bauman*, 611 F.2d at 1119.

[56] *Id.* at 1119.

[57] *Id.* at 1118 ("The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not unlawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.").

[58] ECF No. 931-31 at 11, ¶ 77 ("The BizRadio and KCM/DFFS businesses, however, were a simple Ponzi scheme.").

[59] *Id.* at 8, ¶ 72.

Thus, the *Atkins* rule as articulated in *Bauman* is inapplicable, as more than mere misrepresentations were made to Claimants by the time the SEC Enforcement Action began. In fact, although unargued by Trustee, it appears to be Claimants' position in their state court petition that injury occurred well before this date.[60] At a minimum, injury clearly occurred no later than when the SEC Enforcement Action even if their investments were not entirely lost until Wallace and Bajjali resigned from WBL Partnerships until 2015. To hold otherwise would be to rule that that no cause of action exists against the perpetrators of a Ponzi scheme until the fraud completely collapses, which is an absurd proposition.

As such, this Court concludes that Trustee has met his summary judgment burden to establish that the Conspiracy Claims accrued no later than November 13, 2009, when the SEC Enforcement Action commenced. As discussed, Rule 56 creates a shifting burden, and once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[61] Here, other than legal arguments, the only evidence presented by Claimants in opposition on the issue of when the Conspiracy Claims accrued are affidavits of Claimants, in which each generally assert that they had no idea that their investments were imperiled until Wallace and Bajjali resigned from WBL Partnerships in early 2015.[62] However, this Court notes that, even accepting as true that Claimants truly had no idea that anything was wrong before 2015, their subjective hopes and beliefs that their investments would recover are ultimately irrelevant to the issue of when legal claims accrue. A cause of action accrues when harm occurs even if not discovered until later.[63]

---

[60] *See e.g., id.*
[61] *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).
[62] ECF No. 934-13-21.
[63] *Smith Intern., Inc.*, 490 F.3d at 387.

Thus, this Court finds that there is no genuine dispute of material fact and that the Conspiracy Claims accrued no later than November 13, 2009, when the SEC Enforcement action began.

The Court will next consider if the discovery rule tolled the applicable statute of limitations on Claimants' Conspiracy Claims.

### b. Discovery Rule

Trustee asserts that the discovery rule does not toll the statute of limitations on the Conspiracy Claims because Claimants knew they were injured and suffered losses of their investments in KCM and BizRadio no later than when the SEC Enforcement Action began.[64] Trustee does not argue that the discovery rule is inapplicable to the Conspiracy Claims, but instead seems to argue that summary judgment evidence negates it.[65] Claimants generally contend that Trustee cannot conclusively establish that the discovery rule is inapplicable because (1) Trustee has failed to show when the Conspiracy Claims accrued, and (2) Claimants subjective state of mind, as demonstrated by their respective affidavits submitted to this Court, show that they did not know their investments were imperiled until 2015.[66] The Court quickly dispenses with Claimants' first argument, as this Court has already determined that the Conspiracy Claims each accrued no later than November 13, 2009.

To be entitled to summary judgment on limitations grounds, movant may "negate the discovery rule" by either conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it.[67] The discovery rule is a "narrow

---

[64] ECF No. 931 at 22-23.
[65] *See id.*
[66] ECF No. 934 at 17-18.
[67] *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021) (quoting *Schlumberger Tech. Corp. v. Pasko*, 544 S.W. 3d 830, 834 (Tex. 2018).

exception" to the legal injury rule (i.e. claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury) that "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action.[68] The discovery rule applies when the injury is by its nature inherently undiscoverable.[69] However, the discovery rule does not linger until a claimant learns of actual causes and possible cures.[70] Nor does it defer accrual until the plaintiff know "the specific nature of each wrongful act that may have caused the injury."[71] or "the exact identity of the wrongdoer."[72] Even those owed a fiduciary duty are not altogether absolved of the usual obligation to use reasonable diligence to discover an injury.[73] So, when the facts of misconduct become apparent it can no longer be ignored, regardless of the nature of the relationship.[74]

Here, the Court first notes that even taking it as true that Claimants somehow did not know that they had claims against Debtors prior to 2015, Claimants' reliance on their subjective beliefs is erroneous, as the discovery rule only defers accrual of a cause of action until the plaintiff knew or, *exercising reasonable diligence*, *should have known* of the facts giving rise to the cause of action.[75] Claimants' attempt to argue that there is an issue of fact/lack of evidence from the Trustee with respect to whether they had actual knowledge of the SEC Enforcement Action at the time and point to their affidavits in support of their lack of knowledge.[76] However, contrary to Claimants implicit contention, actual knowledge is not necessary for protections afforded by the discovery

---

[68] *Berry v. Berry*, 646 S.W.3d 516, 524 (quoting *Comput. Assocs. Int'l Inc. v. Altai Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).
[69] *Agar Corp.*, 582 S.W.3d 136, 139 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998).
[70] *PPG Indus. Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004).
[71] *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749.
[72] *Childs*, 974 S.W.2d at 40.
[73] *Berry*, 646 S.W.3d at 526.
[74] *Id.*
[75] *Berry v. Berry*, 646 S.W.3d 516, 524 (quoting *Comput. Assocs. Int'l Inc. v. Altai Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).
[76] ECF No. 934 at 17-18.

rule to end as discussed *supra*.[77] The Texas Supreme Court has held that, "[w]e have often held that accrual of a claim is not delayed when information that would reveal the existence of the injury is publicly available."[78] For example, "when there is actual or constructive notice, or when information is readily accessible and publicly available, then, as a matter of law, the accrual of a fraud claim is not delayed."[79] Here, the SEC Enforcement Action was publicly available information, that, at a minimum, put Claimants on constructive notice of claims against Kaleta, KCM, BizRadio, and DFFS and the need to further investigate related causes of action.

Furthermore, and ironically, a review of Claimants' affidavits actually show that they in fact did have actual knowledge of the SEC Enforcement Action, as each affidavit states: "During the pendency of the KCM Receivership, I was told by David Wallace that our investments were safe, that the receiver would recover the money lost by KCM, and that the Wallace Bajjali companies were not in jeopardy."[80] As such, there is clearly no dispute of material fact. The SEC Enforcement Action unequivocally puts Claimants on notice of the predicate securities fraud, fraud, and breach of fiduciary duty claims underlying their Conspiracy Claims against Debtors. "The discovery rule is a narrow exception that is only applied in 'exceptional cases.' Applications of the rule 'should be few and narrowly drawn.'"[81] This is not an exceptional case, and whether or not Claimants had actual knowledge of their Conspiracy Claims against Debtors, the SEC Enforcement action was more than sufficient to put Claimants on notice to make further inquiries as to who may have participated in these acts.[82]

---

[77] *Berry*, 646 S.W.3d at 524.
[78] *Id.*
[79] *Id.*
[80] ECF No. 934-13 at ¶ 3; 934-14 at ¶ 3; 934-15 at ¶ 3; 934-16 at ¶ 3; 934-17 at ¶ 3; 934-18 at ¶ 3; 934-19 at ¶ 3; 934-20 at ¶ 3; 934-21 at ¶ 3.
[81] *Berry*, 646 S.W.3d at 524.
[82] ECF No. 931-28.

Thus, this Court concludes as a matter of law that Trustee has conclusively shown that no later than by the time of the SEC Enforcement Action, the Conspiracy Claims were no longer inherently undiscoverable by Claimants.[83]

### c. Fraudulent Concealment

Next, Claimants contend that the fraudulent concealment doctrine tolls the limitations period on their Conspiracy Claims.[84] The Texas Supreme Court has provided that:

> a party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense. A mere pleading does not satisfy either burden.[85]

Generally, fraudulent concealment only tolls limitations periods until "a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action."[86] However, even if fraudulent concealment applies, the doctrine "does not extend the limitations period indefinitely."[87]

For the same reasons stated *supra* with respect to the discovery rule, this Court finds that Claimants were sufficiently on notice of the facts, conditions, or circumstances that would cause a reasonably prudent person to make an inquiry that would reveal their causes of action no later

---

[83] *See also Brooks v. United Dev. Funding III, L.P.*, No. 4:20-CV-00150-O, 2020 WL 6132225, at *2 (N.D. Tex. June 18, 2020) ("For the reasons that follow, however, the Court agrees with Plaintiffs that, based on the pleadings, the discovery rule tolls the statute of limitations on their TSA claims until the filing of the SEC Enforcement Action on July 3, 2018.").

[84] ECF No. 934 at 48-19.

[85] *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 749–50 (Tex. 1999).

[86] *Valdez v. Hollenbeck,* 465 S.W.3d 217, 230 (Tex. 2015).

[87] *Id.*

than when the SEC Enforcement Action began. Claimants' reliance on their subjective beliefs in their affidavits are insufficient to defeat summary judgment as discussed *supra*.[88]

### d. Tolling & Forbearance Agreements

Claimants' last defense is that limitations on their Conspiracy Claims were tolled by certain tolling agreements entered into between Debtors and Claimants from January 17, 2012, until July 1, 2014, ("*Tolling Agreements*") and subsequent forbearance agreements entered into on November 1, 2013, until December 31, 2014, which tolled limitations on unbarred claims until March 30, 2015 ("*Forbearance Agreements*").[89] The Court will consider each in turn.

### i. Tolling Agreements

Claimants contend that all causes of action against Debtors were tolled starting January 17, 2012, until Claimants subsequently entered into the Forbearance Agreements on November 1, 2013.[90] Trustee contends that Claimants are not party to the Tolling Agreements, and that the only parties covered by this agreement were the Ellisor Claimants who were plaintiffs in the 2012 state court litigation.[91] Generally, interpretation of a contract is a purely legal issue that this Court may resolve on summary judgment.[92] However, when there is a choice of reasonable interpretations of a contract summary judgment may be precluded.[93]

Having reviewed the Tolling Agreements, the Court first notes that Claimants present multiple copies of two tolling agreements executed on January 17, 2012, and September of 2013. There are three copies of the January 17, 2012, tolling agreement, which contain differing language

---

[88] ECF No. 934 at 24-25.
[89] ECF No. 934 at 25-31.
[90] *Id.* at 20-21, ¶ 50.
[91] ECF No. 942 at 3-4.
[92] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).
[93] *Id.*

with respect to who is covered under the agreement. Two of the agreements define "Claimants" as follows:[94]

> The parties to this Renewal entered into a Tolling Agreement effective as of the 17th day of January, 2012 (the "Effective Date") by and between the parties identified on Exhibit A hereto as "Plaintiffs", and any other related and affiliated corporations and businesses (referred to jointly and/or severally as the "Claimants") on the one hand, and the parties identified as "Defendants" on Exhibit A hereto, and their agents or affiliates, (referred to jointly and/or severally as the "Defendants") on the other hand. The Claimants and the Defendants are collectively referred to as the "Parties."

The third copy defines "Claimants" differently:[95]

> The parties to this Renewal entered into a Tolling Agreement effective as of the 17th day of January, 2012 (the "Effective Date") by and between "Claimants," which is defined as clients of Schmidt Law Firm, PLLC, who have claims against Defendants, and any corporations and businesses affiliated with them, on the one hand, and the parties identified as "Defendants" on Exhibit A hereto, and their agents or affiliates, (referred to jointly and/or severally as the "Defendants") on the other hand. The Claimants and the Defendants are collectively referred to as the "Parties." In June, 2012, the Parties agreed to extend that tolling agreement until December 31, 2012.

The first two copies of the January 2012 agreement expressly define "Claimants" as plaintiffs listed on an attached "Exhibit A", which do not include Claimants.[96] However, these first two copies are unsigned by Claimants' counsel.[97] The third copy of the agreement is far broader as merely "clients of Schmidt Law Firm, LLC."[98] The third copy is signed by Claimants counsel.[99] Both copies of the September 2013 agreement use the broader language defining "Claimants" as well.[100] However, as Trustee correctly points out, each of the Tolling Agreements is signed by Claimants counsel as, "attorney in fact and at law for Plaintiffs" which at the time, appear to only

---

[94] ECF No. 934-8 at 9, 13.
[95] *Id.* at 5.
[96] *Id.* at 9, 13.
[97] *Id.* at 11, 15.
[98] *Id.* at 5.
[99] *Id.* at 8.
[100] *Id.* at 1, 20.

have included the Ellisor Claimants, as the Taylor Claimants were not a party to the 2012 state court litigation.[101]

As such, the Court finds that there is a genuine dispute of material fact as to the intent of who was covered under the Tolling Agreements. Three issues of fact preclude interpretation of this contract: (1) whether or not Claimants were clients of the Schmidt Law Firm at the time the Tolling Agreements were signed, (2) whether or not Mr. Schmidt had authority to enter into this agreement on behalf of Claimants, as his signature would seem to imply that he was only authorized to enter into this agreement on behalf of the Ellisor Claimants, and (3) which of the several copies of the Tolling Agreements presented as evidence were the final binding agreement between the parties.

The Court will next consider the Forbearance Agreement.

### ii. Forbearance Agreement

Trustee contends that the Forbearance Agreement does not toll the limitations period on Claimants' Conspiracy Claims because (1) by its terms, the Forbearance Agreement expired on March 30, 2015, and thus any claims against Fund II, and WB Holdings are barred since their respective petitions were filed April 2, 2015, (2) Claimants are not defined as "Covenanting Parties" under the Forbearance Agreement, and thus are not parties to the agreement, (3) the Forbearance Agreement's definition of "disputed matters" does not include the Conspiracy Claims, and (4) Porter and Murphy Road do not fall into the definition of "WBDP Parties" and thus are not parties to the Forbearance Agreement.[102] The Court will consider each in turn.

### (a) Whether the Conspiracy Claims against Fund II and WB Holdings are barred

---

[101] *See generally id.*
[102] ECF No. 931 at 37-39.

Trustee contends that, at a minimum, the claims against Fund II and WB Holdings are barred, as the Forbearance Agreement expired on March 30, 2015, several days before Fund II and WB Holdings filed their respective petitions.[103] Claimants primary argument in response is to argue that their Conspiracy Claims did not accrue until January 2015.[104] However, this Court has already ruled that the Conspiracy Claims accrued no later than November 13, 2009. Thus, the Court dispenses with this argument. Upon review of the Forbearance Agreement, the terms of the contract are unambiguous, and any unbarred claims held by Claimants had to be filed no later than March 30, 2015.[105] Thus, the Forbearance Agreement does not toll the Conspiracy Claims as against Fund II and WB Holdings.

Accordingly, summary judgment is granted and Claimants' proofs of claim are disallowed to the extent they are predicated on claims for conspiracy to commit fraud, conspiracy to commit breach of fiduciary duty, and conspiracy to commit securities fraud brought as KCM and BizRadio equity plaintiffs as against the estates of WB Real Estate Holdings, LLC and Wallace Bajjali Investment Fund II, LP as enumerated in their State Court Petition.

The Court will next consider Trustee's remaining arguments as whether the Conspiracy Claims survive as against Porter and Murphy Road.

### (b) Whether Claimants are "Covenanting Parties" to the Forbearance Agreement

Trustee contends that the recitals in the Forbearance Agreement concerning the term "Covenanting Party" exclude the Claimants because the recitals indicate that a Covenanting Party "is the holder of units of limited partnership interest and/or a noteholder interest in one or more of

---

[103] *Id.*
[104] ECF No. 934 at 29-30.
[105] ECF No. 931-44 at 2.

the WB Investment Funds" ("*Recital*").[106] Claimants contend that the Recital was not a defining or limiting clause in the contract, and that Claimants clearly are parties to the contract.[107] The relevant portion is as follows:

> This Forbearance Agreement ("Agreement") is effective as of the 1st day of November, 2013, and is made by _EMILY BASS_____ (the "Covenanting Party"), in favor of the WBDP Parties (defined below).
>
> R E C I T A L S
>
> WHEREAS, the Covenanting Party is the holder of units of limited partnership interest and/or a noteholder interest in one or more of West Houston WB Realty Fund, L.P., Wallace Bajjali Investment Fund II, L.P. or Laffer Frishberg Wallace Bajjali Economic Opportunity Fund, L.P. (each an "Investment Fund" and together the "Investment Funds") or their portfolio assets;

Upon review, this Court does not agree with Trustee's position that the Recital otherwise nullifies the clear definition of "Covenanting Party", which is merely the signatory.[108] Trustee's implicit interpretation of the Forbearance Agreement appears to be that, notwithstanding that certain Claimants appear to have entered into these agreements, that effectively the entire contract is nullified because of the Recital.[109] This interpretation strikes the Court as absurd. To give meaning to all terms in the contract, the Court interprets the Forbearance Agreement as applicable to Claimants to the extent that they held claims covered under the contract.

However, while Claimants provided signed copies of the Forbearance Agreement for Ron & Emily Bass, Randall DePue, Michael Dorsey, Jim Pier, Blake Taylor, and Don Taylor, Claimants fail to provide a signed contract for the Furtados, Harrells and Maases, claiming that they failed to retain their copies.[110] Furthermore, all of the Forbearance Agreements provided by

---

[106] ECF No. 931 at 49.
[107] ECF No. 934 at 30, ¶ 72.
[108] ECF No. 931-44.
[109] ECF No. 931 at 49.
[110] ECF No. 934 at 29, ¶ 66.

Claimants are unsigned by David Wallace, who is listed as the counterparty to the Forbearance Agreement on behalf of Wallace Bajjali Development Partners, L.P.[111]

As such, genuine disputes of material fact remain as to whether or not all Claimants were parties to the Forbearance Agreement and if David Wallace signed each of the Forbearance Agreements.

### (c) Whether the Conspiracy Claims are covered under the Forbearance Agreement

Trustee contends that the definition of "Disputed Matters" in the Forbearance Agreement excludes the Conspiracy Claims.[112] Specifically, Trustee argues that "Disputed Matters" only applies to matters concerning Claimants "limited partnership interests and/or noteholder interests in one or more of the 'Investment Funds'… and not to any separate investments or loans made by them with KCM and/or Biz Radio and/or other Debtors, Related Debtors, or non-Debtor entities."[113] Claimants contend that the language in the contract specifically mentions Biz Radio, and that it was written exceptionally broad to include all claims Claimants might have against Debtors to prevent any lawsuit from being filed that might derail the IPO.[114] The relevant language is as follows:

> WHEREAS, to date, the limited partners of the Investment Funds, including the Covenanting Party, have received either limited or no distributions from the Investment Funds due to market conditions, compounded by the losses to Biz Radio, and as a result, differences of opinion may exist between the parties relating to various matters associated with the management and operation of the Investment Funds, the acquisition and disposition of portfolio assets of the Investment Funds and other matters relating to the Investment Funds and the securities of one or more Investment Funds held by the Covenanting Party (the "Disputed Matters");

---

[111] ECF No. 931-12.
[112] ECF No. 931 at 49.
[113] *Id.*
[114] ECF No. 934 at 31.

Upon review, the Court agrees with Claimants that "Disputed Matters" broadly encompasses claims relating to the losses associated with investments in Biz Radio and claims against the Investment Funds, which include Debtors as discussed *infra*.

### (d) Whether Debtors are WBDP Parties as defined in the Forbearance Agreement

Last, Trustee contends that Porter and Murphy Road do not fall under the definition of WBDP Parties because they were not under the control of any of the WBDP Parties as evidenced by their operating agreements.[115] Claimants contend that Porter and Murphy Road are "affiliates" of the WBDP Parties as defined in the agreement.[116] The disputed language is as follows:

> 1.    The Covenanting Party covenants and agrees not to sue or otherwise bring any suit, claim or complaint with any court or other tribunal ("Forbear") to the extent WBDP or its successor in interest is successful in completing an initial public offering of stock. The "Forbearance Period" shall expire on December 31, 2014. The Forbearance shall apply to any of (a) WBDP, (b) Wallace Bajjali Management, LLC, (c) David G. Wallace, (d) Costa Bajjali, (e) Whitney Leigh Wallace 1996 Sub-S Trust, (f) Jacquelyn Marie Wallace 1996 Sub-S Trust, (g) WB Substitute GP, LLC and (h) WBIF II, LLC, and their respective current and former officers, directors, managers, predecessors, successors, assigns, beneficiaries, agents, attorneys, servants, contractors, consultants, employees, partners, members, shareholders, affiliates, subsidiaries and entities under the control of any of the foregoing, and any of their respective representatives, heirs, legatees, legal representatives, attorneys and those acting on behalf of any of the foregoing (collectively, the "WBDP Parties") on any matters, known or unknown, that in any way relate to the Disputed Matters or for any other claims arising prior to the date hereof, and shall hold harmless and indemnify the WBDP Parties in the event of any violation of this Section 1. The Covenanting Party further covenants and agrees that it will be solely liable for any and all attorneys' fees and expenses (whether or not allowed by law) of the WBDP Parties as a result of any such suit or claim brought in violation of this Section 1.

Notably, however, even taking as true Trustee's control argument, "affiliates" as delineated in the contract is not dependent on the WBDP Parties controlling said entity. The contract language includes at the end of the list "and entities under the control of any of the foregoing..." but this language does not modify "affiliates" or any other referenced entity or person coming before that

---

[115] ECF No. 931 at 49-50.
[116] ECF No. 934 at 30-31.

language. Thus, the operative question is merely whether or not Porter and Murphy Road can be construed as "affiliates" of the WBDP Parties.

Under Texas law, words not defined in a contract are to be given their "plain and ordinary meaning."[117] Furthermore, from review of the relevant caselaw, this Court also finds that the plain meaning of "affiliate" in the context of corporate structures does include both subsidiaries and principals of an entity.[118] However, from the evidence presented, this Court finds that there exists a genuine dispute of material fact as to what the affiliation of Porter and Murphy Road were to the WDBP Parties as defined in the contract as of November 1, 2013, when the Forbearance Agreement became effective.[119] First and foremost, while the contract expressly makes reference to Fund II and the LFW Fund when defining "Investment Funds", only Fund II is expressly mentioned in the enumerated parties making up the "WBDP Parties."[120]

Furthermore, WB Holdings is defined as "WBREH" in the contract and is similarly not expressly enumerated in the list of entities covered by "WBDP Parties."[121] This casts significant interpretative doubt on whether the LFW Fund or WB Holdings were meant to be covered under the contract, and thus, whether their asserted affiliates Porter and Murphy Road are also covered. Furthermore, given the conflicting positions taken by Claimants and Trustee as to who owns Porter and Murphy Road in light of the disputed merger, there is an evidentiary question as to what their affiliation was with entities covered under the contract as of November 1, 2013, when the Forbearance Agreement was signed. These are issues of fact that will need to be addressed at trial.

---

[117] *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013) (further citations omitted).
[118] *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013); *In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Litig.*, C.A. No. H-10- 271, 2011 WL 1232352, at *19 (S.D. Tex. Mar. 31, 2011).
[119] ECF No. 934-12.
[120] *Id.*
[121] *Id.*

Accordingly, summary judgment is denied with respect to Claimants' claims for conspiracy to commit fraud, conspiracy to commit breach of fiduciary duty, and conspiracy to commit securities fraud brought as KCM and BizRadio equity plaintiffs as against the estates of Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

The Court will next consider the claims brought by Claimants as WBL Partnership Plaintiffs.

## 2.   Claims brought as WBL Partnership Plaintiffs

Trustee seeks to disallow claims asserted by Claimants against Debtors that are predicated on the following causes of action as asserted in the state court litigation: (a) negligent misrepresentation, (b) breach of fiduciary duty, (c) participation in breach of fiduciary duty, (d) fraud, (e) conspiracy, and (f) aiding and abetting in violations of the Texas securities act.[122] The Court will consider each in turn.

### a.   Negligence/negligent misrepresentation

Claimants stipulate that the negligent misrepresentation claims are asserted only against the Debtors' estates in which they made their respective investments or loans as follows: WB Holdings (Randall DePue), Fund II (Bass, DePue, Dorsey, Harrell, Maas, Pier, and Blake Taylor), Fund I (Maas and Furtado), Porter and Murphy Road (Donald Taylor).[123] Trustee contends that all of the negligent misrepresentations made to each Claimant occurred, and thus each claim accrued, between June 2005 and November 2009, and thus all claims expired no later than November 2011.[124] Claimants, notably, do not contest any of the dates asserted by the Trustee,[125] but instead

---

[122] ECF No. 931.
[123] See ECF No. 760 at 12, ¶¶36 – 40.
[124] ECF No. 931 at 26.
[125] ECF No. 934 at 19, ¶ 46.

assert that injuries did not occur until 2015, or, alternatively, that the discovery rule, fraudulent concealment doctrine, or the Tolling and Forbearance Agreements nonetheless toll limitations.[126]

Under Texas law, negligent misrepresentation claims accrue when the misrepresentations are made.[127] Negligent misrepresentation claims are subject to a two-year statute of limitations.[128] In light of Claimants' stipulation that all relevant misrepresentations were made between June 2005 and November 2009, this Court concludes that there is no material dispute of fact and all negligent misrepresentation claims made by Claimants expired no later than November 2011.

However, as discussed *supra*, to prevail at summary judgment Trustee must conclusively prove that either the discovery rule is inapplicable or that summary judgment evidence negates it.[129] Unlike the Conspiracy Claims, Trustee opts to address the discovery rule as to all claims asserted as WBL Partnership Plaintiffs in one paragraph that does not clearly delineate which evidence applies to and negates the discovery rule as to which claim asserted by Claimants.[130]

Accordingly, summary judgment is denied on Claimants' negligence/negligent misrepresentation claims brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

### b. Breach of Fiduciary Duty

Claimants have stipulated that the breach of fiduciary duty claims brought against Debtors belong to the Trustee.[131] Accordingly, summary judgment is granted and Claimants' proofs of

---

[126] *Id.*

[127] *Anderson v. Am. Tank & Vessel Inc.*, No. CIV.A. H-05-3652, 2007 WL 954228, at *5 (S.D. Tex. Mar. 26, 2007); *Rotella v. Mid-Continent Cas. Co.*, No. CIV A 308-CV-0486-G, 2009 WL 1650475, at *8 (N.D. Tex. June 10, 2009).

[128] *Texas Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302 (Tex. App. 1991), *writ denied* (Nov. 13, 1991).

[129] *Draughon*, 631 S.W.3d at 88.

[130] *See* ECF No. 931 at 37.

[131] ECF No. 931 at 27 (citing Claimants brief on standing).

claim are disallowed to the extent they are predicated on claims for breach of fiduciary duty brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

### c.  Participation in Breach of Fiduciary Duty

Trustee next seeks summary judgment on Claimants' participation in breach of fiduciary duty claims against Debtors.[132] Trustee contends (1) Claimants cannot show an essential element of their claims: the existence of a duty owed by Wallace or Bajjali to Claimants, (2) that the statute of limitations has expired on these claims, and (3) Claimants lack standing to bring these claims.[133] The Court will consider each in turn.

### i.  Existence of a duty

Trustee contends that Claimants cannot demonstrate that Wallace or Bajjali owed them an underlying fiduciary duty, and thus, Debtors cannot have conspired to breach said duty.[134] The general elements for a knowing participation claim are: (1) the existence of a fiduciary relationship; (2) the third party knew of the fiduciary relationship; and (3) the third party was aware it was participating in the breach of that fiduciary relationship.[135]

In their Response, Claimants fail to respond to Trustee's argument other than to conclusory argue that "Claimants disagree, because the Petition incorporated into their Proofs of Claim does plead multiple fiduciary relationships."[136] This response by Claimants is woefully insufficient to maintain their claim for participation. At the summary judgment stage, a nonmovant can no longer

---

[132] ECF Nos. 931 at 38-39; 948.
[133] *Id.*
[134] ECF No. 931 at 28.
[135] *See Meadows v. Harford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007).
[136] ECF No. 934 at 20, ¶ 48; ECF No. 949.

rest on mere allegations and must set forth specific facts by affidavit or other evidence.[137] The movant "bears the initial burden of ... demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[138] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[139]

As discussed, Claimants did not cite any affidavits or other evidence to support that there was the existence of a duty for their knowing participation in breach of fiduciary duty cause of action in response to Trustee's argument that Claimants were owed no duty.[140] Thus, Claimants have failed to show an essential element of their claims. As such, the Court need not consider Trustee's other arguments concerning standing, limitations, or Claimants arguments concerning tolling.

Accordingly, summary judgment is granted and Claimants' proofs of claim are disallowed to the extent they are predicated on claims for participation in breach of fiduciary duty brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

### d.  Fraud

Trustee next seeks summary judgment on each of Claimants' fraud claims against Debtors, to wit: (i) fraud in the merger transaction, (ii) fraud in the payment of the IIRC secured debt for Wallace's benefit and transfer of monies among Debtors, and (iii) fraud in inducement of loans.[141]

---

[137] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
[138] *Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 917 (S.D. Tex. 2022) (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548).
[139] *Id.*
[140] *See* ECF No. 934 at 20, ¶ 48.
[141] ECF No. 931 at 28-34.

The Court will consider each in turn.

###### i.   Alleged fraud in the merger transaction

Trustee argues that Claimants' have no standing to prosecute their fraud claim based on the merger and consolidation of Fund I, Fund II, the LFW Fund, and WB Holdings in May 2009 because, (1) notwithstanding labels, it is really a disguised fraudulent transfer claim held by the Trustee,[142] and (2) Claimants cannot show a particularized injury that was not also borne by the Debtors as is necessary to establish standing.[143]

The standing inquiry involves an examination of whether (1) the plaintiff was personally injured – the plaintiff is required to plead facts demonstrating that he (rather than a third party) suffered the injury – and the injury was concrete and particularized, actual or imminent, and not hypothetical; (2) the plaintiff's alleged injury is fairly traceable to the defendant's conduct; and (3) the plaintiff's alleged injury is likely to be redressed by each form of requested relief.[144] Subject matter jurisdiction depends, in part, on whether a plaintiff has standing.[145]

A party's standing to sue is implicit in the concept of subject-matter jurisdiction and is not presumed; it must be proved.[146]  Claimants "bear the burden of alleging facts that affirmatively demonstrate [this Court's] jurisdiction to hear [this] case."[147]  Standing must exist for each cause of action asserted by Claimants.[148]  To survive a challenge to standing at the summary judgment stage, Claimants must set forth, by affidavit or other evidence, specific facts, which will be taken

---

[142] ECF No. 931 at 23, 29-30.
[143] *Id.* at 30.
[144] *Heckman v. Williamson County,* 369 S.W.3d 137, 155 (Tex. 2012) (citations omitted).
[145] *Id.*
[146] *See Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 445-46 (Tex. 1993). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (to establish standing a party must show an injury in fact traceable to the conduct of the defendant likely to be redressed by the relief sought).
[147] *Wesolek v. Layton*, 871 F. Supp. 2d 620, 628 (S.D. Tex. May 18, 2012).
[148] *McVey v. Johnson (In re SBMC Healthcare, LLC)*, No. 16-2947, 2017 U.S. Dist. LEXIS 71848, at *26 (S.D. Tex. May 11, 2017).

as true for summary judgment purposes, supporting each element of standing.[149]

Whether Claimants' cause of action is for common law fraud or fraudulent transfer, the analysis is the same regarding the alleged injury: the Court must consider the nature of the injury alleged by Claimants and the relationship between Debtors and that injury.[150] "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate."[151] "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate."[152]

Here, Claimants fail to respond to, demonstrate, or otherwise cite evidence supporting a particularized injury that they suffered as a result of the merger that is distinct from all of the other shareholders/investors of the Debtors other than to baldly assert that their claim is a "damages claim."[153] Furthermore, Claimants implicitly concede that the injury caused by the merger was borne by the Debtors, and Claimants only indirectly suffered losses as investors: "The Claims in the Proofs of Claim relating to the Merger assert that, rather than letting some of the weaker and more damaged boats sink, Wallace and Bajjali lashed all the boats together in the Merger transaction and caused the entire fleet to sink."[154] Further evidence of this can be found in Claimants' 10th amended state court petition: "[t]he merger ultimately led to the collapse of all the Wallace Bajjali partnerships, and caused the loss of all of the WBL Partnership Plaintiffs' investments."[155] Claimants' themselves assert that Debtors were harmed by the merger because it

---

[149] *Lujan*, 504 U.S. at 561 (citing FED. R. CIV. P. 56(e)).
[150] *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584.
[151] *In re Educators Group Health Trust*, 25 F.3d at 1284 (citations omitted).
[152] *Id.*
[153] *See* ECF No. 934 at 32.
[154] ECF No. 934 at ¶ 81.
[155] ECF No. 931-41 at 62, ¶ 262.

caused them to collapse, and that the harm was only indirectly borne by Claimants as investors.[156] As such, Claimants have failed to satisfy their summary judgment burden to demonstrate a particularized injury distinct from Debtors as necessary to establish standing.[157]

Accordingly, summary judgment is granted and Claimants' proofs of claim are disallowed to the extent they are predicated on claims for fraud in in the merger transaction brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

### ii. fraud in the payment of the IIRC debt & other transfers of money between Debtors/LFW Fund

Similarly, Trustee argues that Claimants lack standing to pursue this claim because (1) the funds remitted by Fund II on the IIRC secured note as well as other transfers of money between Debtors without adherence to corporate formalities are in fact disguised fraudulent transfer and denuding claims belonging to the estate, and (2) Claimants cannot demonstrate particularized injuries to establish standing.[158]

Claimants, in response, only generally assert that direct and derivative claims can share the same factual predicate and baldly assert, again, that their claim is "a damages claim" but fail to clearly articulate or provide any evidence showing the damages suffered were unique to Claimants and that Debtors could not have brought claims predicated on these transfers as of the petition date.[159] "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the

---

[156] *Id.*
[157] *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).
[158] ECF No. 931 at 30-32.
[159] ECF No. 934 at 34-36.

applicable law, then the cause of action belongs to the estate."[160] To the extent that any harm

occurred, it was to the Debtors when each of the complained of transfers of money were made.

Claimants were only indirectly harmed as investors when their investments later failed. At the

summary judgment stage, Claimants must do more than rely on pleadings and bald assertions to

support their standing to bring a claim and have failed to do so here.[161]

Accordingly, summary judgment is granted and Claimants' proofs of claim are disallowed

to the extent they are predicated on claims for fraud in the payment of the IIRC secured debt and

fraud in the transfer of other monies among Debtors for Wallace's benefit brought as WBL

Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali

Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development,

LLC as enumerated in their State Court Petition.

### iii.  Fraud in inducement

Trustee argues that Claimants fraud in the inducement claims should be dismissed because

(1) the disclosures made to Claimants at the time of their investments adequately disclosed the

risks of the investments, and that (2) Claimants lack standing to bring these claims.[162]

First, the Court notes, as highlighted by Claimants, that notwithstanding significant

discussion by the Trustee with respect to a variety of disclosures made to Claimants by Fund II

and the LFW fund PPMs, that these disclosures do not appear to (nor could they) disclose or

otherwise insulate Debtors from actual fraud in the inducement of their investments/loans.[163]

Second, although Claimants have the burden to demonstrate standing as to each of their claims,

Trustee still carries the initial burden to articulate why Claimants lack standing. Here, Trustee

---

[160] *Educators Grp. Health Tr.*, 25 F.3d at 1284 (citations omitted).
[161] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); ECF No. 934 at 35-36.
[162] ECF No. 931 at 32-33.
[163] *See id.*

argues that because Claimants have argued that their injuries were not suffered until after Debtors filed bankruptcy, that their injury was not unique to them.[164] Trustee does not explain this argument and the Court fails to see how Claimants injuries were not unique merely because they were not asserted until post-bankruptcy.

Furthermore, this Court notes that, as discussed in *NC12 Inc.*, that to the extent that Claimants can prove that Debtors induced Claimants into making investments predicated on fraudulent representations, Claimants could theoretically recover the difference between what the stock was worth at the moment of investment and what was paid for said stock, as this would be a unique harm only suffered by Claimants.[165] However, as it stands, Claimants have failed to clearly articulate or provide evidence either in their Response or in the 10th amended state court petition as to what misrepresentations were made to them by the Debtors specifically that would support their claim, or what unique harm was suffered as a result of direct investment in the Debtors. However, because Trustee has not clearly asserted this argument a genuine issue of material fact remains for trial.

Accordingly, summary judgment is denied with respect to Claimants' claims for fraud in the inducement brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

### e. Civil conspiracy claims

Trustee next contends that Claimants' lack standing to bring their civil conspiracy claims because the underlying fraud claims are derivative as discussed *supra*.[166] Trustee additionally

---

[164] *Id.* at 34.
[165] *In re NC12, Inc.*, 478 B.R. 820, 837 (Bankr. S.D. Tex. 2012).
[166] ECF No. 931 at 34-35.

argues that these claims are time barred, but does not clearly articulate why, especially in light of the fact that limitations was not argued on the underlying fraud claims.[167] As such, this second argument is dispensed with.

Texas law is clear that "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."[168] Claimants' conspiracy claims are predicated on alleged fraud, securities fraud, and participation in breach of fiduciary duties.[169] However, as discussed *supra* and *infra*, all claims for aiding and abetting violations of the Texas securities act, knowing participations in breach of fiduciary duty, and fraud claims, other than fraud in the inducement, have been disallowed. Thus, Claimants' claims for civil conspiracy predicated on these underlying claims cannot survive with the exception of fraud in the inducement.

Accordingly, summary judgment is granted and Claimants' proofs of claim are disallowed to the extent they are predicated on claims for civil conspiracy, except for conspiracy for fraud in the inducement, brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

### f.   Aiding and abetting violations of the Texas securities act claims

Last, Trustee contends that Claimants aiding and abetting securities fraud claims are barred by limitations.[170] Pursuant to Tex. Gov't Code § 4008.062, "a person may not sue [for securities fraud]… more than three years after the date of discovery of the untruth or omission, or after the date discovery should have been made by the exercise of reasonable diligence…"[171] Here, it is

---

[167] *Id.*
[168] *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).
[169] *See* ECF Nos. 931-41. *See also* ECF No. 934 at 20, ¶ 45.
[170] ECF No. 931 at 35-36.
[171] Tex. Gov't Code Ann. § 4008.062.

undisputed that Claimants made all of their relevant investments on or before October 31, 2009.[172] Trustee contends either that the claims accrued at the time of sale or no later than the commencement of the SEC enforcement action in November 2009.[173] Claimants raise similar arguments in defense as prior claims, arguing that Claimants did not suffer an injury until 2015, that the discovery rule and/or fraudulent concealment doctrine tolls limitations, or that the Tolling and Forbearance Agreements tolled limitations.[174]

Similar to the Conspiracy Claims asserted as KCM and BizRadio equity Plaintiffs, this Court agrees that the SEC Enforcement Action put Claimants sufficiently on notice to investigate further into others, including Debtors, who may or may not have aided and abetted in violations of Texas securities laws pertaining to and in connection with investments in BizRadio.[175] Although Claimants' routinely focus on their alleged subjective awareness of what was going on at the time, what they knew or should have known is an objective standard.[176] Furthermore, Claimants have acknowledged their awareness of the SEC Enforcement Action in their affidavits as discussed *supra* and, regardless, are presumed to be constructively aware as it was public information at the time.[177] Claimants' subjective beliefs that their investments would recover is irrelevant and insufficient to defeat summary judgment.[178]

As such, this Court finds that Trustee has conclusively defeated the discovery rule, and the aiding and abetting securities fraud claims accrued, at the very latest, November 13, 2009, and thus were barred no later than November 13, 2012. As such, the Tolling and Forbearance Agreements cannot have applied to the aiding and abetting securities fraud claims. Last, Claimants

---

[172] ECF No. 949 at 2.
[173] ECF No. 931 at 35-36.
[174] ECF No. 934 at 20-21.
[175] ECF No. 931-41.
[176] *Berry*, 646 S.W.3d at 526.
[177] *Berry*, 646 S.W.3d at 524.
[178] *Id.*

attempt to argue that "fraudulent concealment tolled limitations when Wallace told Claimants their money was safe and showed proof of the Amarillo and Joplin deals."[179] However, Claimants carry the burden on fraudulent concealment at summary judgment and cite no evidence to support this assertion.[180] Even if Claimants had, the assertions made do not create a genuine dispute of any material fact sufficient to defeat summary judgment as discussed *supra*.

Accordingly, summary judgment is granted and Claimants' proofs of claim are disallowed to the extent they are predicated on claims for aiding and abetting violations of Texas securities act brought as WBL Partnership Plaintiffs against the estates of WB Real Estate Holdings, LLC, Wallace Bajjali Investment Fund II, LP, Porter Development Partners, LLC and WB Murphy Road Development, LLC as enumerated in their State Court Petition.

## VI.   CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED April 9, 2024

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[179] ECF No. 934 at 26.
[180] *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 749–50 (Tex. 1999).